SLIP OPINION

Cite as 2017 Ark. 264

# SUPREME COURT OF ARKANSAS
No. CR-17-196

| | |
|---|---|
| ALEXANDER POKATILOV<br>APPELLANT | Opinion Delivered: September 28, 2017 |
| V. | APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT [43CR-14-167] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE SANDY HUCKABEE, JUDGE |
| | AFFIRMED; COURT OF APPEALS OPINION VACATED. |

**ROBIN F. WYNNE, Associate Justice**

Alexander Pokatilov appeals from his conviction for possession of a controlled substance with purpose to deliver, for which he was sentenced to five years' probation and ordered to pay a $5000 fine. Appellant makes the following arguments on appeal: 1) the circuit court should have granted his motion for directed verdict; 2) the circuit court erred in refusing a proffered jury instruction; 3) the circuit court erred in refusing to reinstruct the jury after it submitted questions during its guilt-phase deliberations; and 4) the trial court erred in denying appellant's motion to suppress. Our court of appeals affirmed appellant's conviction, *Pokatilov v. State*, 2017 Ark. App. 150, 516 S.W.3d 285, and we granted appellant's petition for review. Because we granted the petition for review, our jurisdiction lies pursuant to Rule 1-2(e) of the Rules of the Arkansas Supreme Court (2016). We affirm.

Appellant was the owner-operator of an automobile-transport carrier. On March 6, 2014, he was driving a load of vehicles from the west coast to the east coast when he was

stopped on Interstate 40 in Lonoke County. Arkansas Highway Police Officer Jeremy Watkins stopped appellant because he observed the car carrier cross the white line and drive on to the shoulder several times. At that time, there was ice on the shoulder of the roadway. Watkins was certified by the United States Department of Transportation (DOT) to perform inspections of commercial vehicles. During the stop, Watkins instructed appellant to produce his paperwork, including his registration, commercial driver's license, logbooks, and the bill of lading for each vehicle being transported, as part of an inspection of the car carrier. After his review of the paperwork was complete, Watkins requested and obtained permission from appellant to search the vehicles appellant was transporting. Approximately thirty-two pounds of marijuana were discovered in one of the vehicles, a 1995 Chevrolet Tahoe. Appellant was arrested and charged with possession of a controlled substance with purpose to deliver.

Prior to trial, appellant filed a motion to suppress evidence, arguing that the stop of his carrier was illegal and that the search of the vehicles was illegal. After a hearing on the motion, it was denied. During trial, at the close of the State's case during the guilt phase and again after close of all the evidence, appellant moved for a directed verdict. Both motions were denied. Appellant subsequently proffered a non-model jury instruction on constructive possession. The trial court declined to give the non-model instruction. When the jury submitted questions to the trial court during its guilt-phase deliberations, appellant again requested that his proffered instruction be given. The request was denied. Appellant was convicted and sentenced as stated above. This appeal followed.

Appellant's first argument is that the trial court erred by denying his motions for directed verdict, arguing that the State failed to prove that he possessed the marijuana. On appeal from the denial of a directed-verdict motion challenging the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, considering only the evidence that supports the verdict, and determine whether the verdict is supported by substantial evidence, which is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. *Turner v. State*, 2014 Ark. 415, at 3, 443 S.W.3d 535, 537.

Although circumstantial evidence may provide a basis to support a conviction, it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Morgan v. State*, 2009 Ark. 257, 308 S.W.3d 147. Whether the evidence excludes every other hypothesis is left to the jury to decide. *Id.* The credibility of witnesses is an issue for the jury and not the court. *Id.* The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.* It is not necessary for the State to prove that an accused physically held the contraband, as possession of contraband can be proven by constructive possession, which is the control or right to control the contraband. *Tubbs v. State*, 370 Ark. 47, 257 S.W.3d 47 (2007). Constructive possession can be implied where the contraband is found in a place immediately and exclusively accessible to the defendant and subject to his control. *Id.*

Appellant was the only person in the automobile carrier when it was stopped. However, because the marijuana was not found in the carrier, but was instead located in a vehicle belonging to another person that was being transported by appellant, this case does

not fit the typical fact pattern for constructive-possession cases, and there exists a question as to whether the analysis required for joint occupancy should be applied. In cases involving joint occupancy of the premises where the contraband is found, some additional factors must be present linking the accused to the contraband. *Loggins v. State*, 2010 Ark. 414, 372 S.W.3d 785. Those factors include (1) that the accused exercised care, control, or management over the contraband; and (2) that the accused knew the matter possessed was contraband. The control and knowledge can be inferred from the circumstances, such as the proximity of the contraband to the accused, the fact that it is in plain view, and the ownership of the property where the contraband is found. *Id.* In addition, an accused's suspicious behavior coupled with proximity to the contraband is clearly indicative of possession. *Id.*

While it does not appear that this court has ever considered a constructive-possession case involving an automobile carrier, we have decided a case in which drugs were found in the trailer of an eighteen-wheel truck. *See McKenzie v. State*, 362 Ark. 257, 208 S.W.3d 173 (2005). In *McKenzie*, we stated that the issue of constructive possession of contraband located in the trailer of an eighteen-wheel truck was one of first impression,[1] and rejected the defendant's challenge to the sufficiency of the evidence because "the State proved other factors linking [him] to the contraband." 362 Ark. at 267, 208 S.W.3d at 178. Because the State was required to prove other factors linking the defendant to the contraband in a case

---

[1] The opinion states that there was a passenger in McKenzie's truck; the identity of the passenger is not revealed, nor is his or her relationship to either McKenzie or the truck disclosed. The opinion makes it clear that the additional factors were required due to the manner of conveyance and location of the contraband, not the presence of a second person in the truck.

involving drugs found in the trailer of an eighteen-wheel truck, we hold that the State should likewise be required to prove additional factors in the instant case, where contraband was found in one of several different vehicles, all belonging to persons other than appellant, that were being hauled on an automobile carrier.[2]

As stated above, marijuana was found in a 1995 Chevrolet Tahoe that was on appellant's carrier. At trial, Watkins testified that appellant's logbooks contained excessive downtime, which was explained as being unusual because appellant would not be paid for downtime. Watkins stated that the bills of lading were not filled out properly and were "very, very generic." Some of the bills listed a first name with no last name; others had no name listed at all. When Watkins asked appellant if he allowed people to keep items in the vehicles, appellant spontaneously brought up marijuana, stating that if the vehicles smelled like marijuana, he would have a friend in law enforcement check them out for him. When Watkins asked appellant if he thought there was anything illegal in the vehicles, appellant responded, "Not really." Watkins testified that appellant appeared "nervous."[3] Watkins indicated during his testimony that he was suspicious of the Tahoe because it was the only one that appellant had picked up from a location other than a residence. According to Watkins, the fact that the Tahoe was a 1995 model with only 40,000 miles on it also aroused

---

[2] In affirming appellant's conviction, our court of appeals relied on its decision in *Barrera v. State*, 2012 Ark. App. 533, in which it held that a joint-occupancy analysis was not applicable when contraband was found in a vehicle that the defendant was hauling on a flatbed trailer. To the extent this opinion conflicts with *Barrera*, *Barrera* is overruled.

[3] Appellant vigorously refutes the testimony that he was nervous and points this court to the video of the stop to support his argument; however, the jury, having heard Watkins's testimony and viewed the video, was charged with determining the weight and credibility to be given to the testimony. *See State v. Johnson*, 326 Ark. 189, 931 S.W.2d 760 (1996).

his suspicion that it might be being used to transport drugs. Watkins also stated that he was curious why someone would pay to transport a vehicle he thought was worth less than the amount paid to transport it.

Randy Couch, whom Watkins called in as backup after he located the marijuana, testified that he found packaging materials similar to those in which the marijuana was wrapped in another vehicle on the carrier.[4] The vehicle also contained a substantial amount of marijuana, rendering it less likely that another person left it in the vehicle for appellant to transport unaware of its presence. *See Mings v. State*, 318 Ark. 201, 884 S.W.2d 596 (1994) (stating that the large amount and significant street value of contraband found in a mobile home was strong circumstantial evidence that it was not inadvertently left there by someone else). Appellant had driven the vehicles on to the carrier and retained their keys, making them exclusively accessible to him while they were being transported. We also note that the paperwork for the Tahoe required appellant to perform a thorough inspection of the vehicle on pickup.

Although appellant took the stand and attempted to provide an innocent explanation for the testimony elicited by the State, the jury was not required to believe his self-serving testimony. *Brown v. State*, 374 Ark. 341, 288 S.W.3d 226 (2008). Taken as a whole and viewed in the light most favorable to the State, the evidence adduced at trial presents additional factors linking appellant to the marijuana sufficient for the jury to conclude that

---

[4] Although Couch testified that he did not retain a sample of the materials from the other vehicle and could not definitively match them with the materials encasing the drugs, it is for the jury to determine the credibility of the witnesses and the weight to be afforded to their testimony. *See Luper v. State*, 2016 Ark. 371, 501 S.W.3d 812.

appellant constructively possessed the marijuana without resorting to speculation or conjecture. The circuit court did not err by denying appellant's motions for directed verdict, and we affirm on this point.

Appellant contends that the trial court erred by failing to give his proffered jury instruction regarding constructive possession. We will not reverse a circuit court's refusal to give a proffered instruction unless there is an abuse of discretion. *Jester v. State*, 367 Ark. 249, 239 S.W.3d 484 (2006). The jury was given the model jury instruction, AMCI 2d 64.420, which provides in relevant part that

> [t]here are two kinds of possession, actual and constructive. Actual possession of a thing is direct physical control over it. Constructive possession exists when a person, although not in actual possession of a thing, has the right to control it and intends to do so, either directly or through another person or persons.

At trial, appellant proffered the following instruction:

> In order to prove constructive possession, the State must establish beyond a reasonable doubt that 1) the defendant exercised care, control, and management over the controlled substance, and 2) that the defendant knew the matter possessed was a controlled substance.

Appellant argues that the trial court abused its discretion by refusing to give his proffered instruction to the jury. We disagree.

In *Walley v. State*, 353 Ark. 586, 112 S.W.3d 349 (2003), the defendant proffered a jury instruction on constructive possession that included language stating that the State was required to prove that the defendant knew that the matter possessed was contraband. As here, the jury was given the model instruction. In holding that the trial court did not abuse its discretion by refusing to give the proffered instruction, we stated that just because a proffered instruction may be a correct statement of the law, that does not mean a circuit

court must give the instruction to the jury. *Walley*, 353 Ark. at 601, 112 S.W.3d at 357. We further reiterated that a non-model instruction is only to be given when the model instruction does not correctly state the law or where there is no model rule on the subject. *Id.* We then declined to overrule prior cases in which we held that the model instruction on constructive possession is a correct statement of the law. *Id.* This case is controlled by our decision in *Walley*. Accordingly, we affirm on this point.

Appellant next argues that it became necessary to give his proffered instruction to the jury during the jury's guilt-phase deliberations. During those deliberations, the jury submitted to the trial court a note containing the following questions: "Are we judging on Defendant's knowledge of having the drug or just possession[?] Actual possession or constructive possession[?]" Appellant argues that the question makes it clear that the proffered instruction should have been given. Again, we disagree. As discussed immediately above, the model instruction is a correct statement of the law. As such, the trial court did not abuse its discretion by failing to reinstruct the jury with the proffered instruction. Instead, the trial court properly told the jury to apply the instructions given in reaching its verdict. We affirm on this point as well.

In his remaining points on appeal, appellant argues that the trial court erred in denying his motion to suppress evidence seized as a result of the search. When reviewing the denial of a motion to suppress evidence, this court conducts a de novo review based upon the totality of the circumstances, reversing only if the circuit court's ruling is clearly against the preponderance of the evidence. *Wagner v. State*, 2010 Ark. 389, 368 S.W.3d 914. Because the determination of a preponderance of the evidence turns on questions of

credibility and the weight to be given testimony, we defer to the trial judge's superior position in this regard. *Marcyniuk v. State*, 2010 Ark. 257, 373 S.W.3d 243.

Appellant first contends that he had standing to appeal the suppression issue through his status as a bailee. The circuit court found that he had standing to contest the search, and the State has not appealed that finding. We need not address this point.

Appellant next argues that the trial court erred in finding that Watkins had probable cause to stop his vehicle. It is well settled that "a police officer may stop and detain a motorist where the officer has probable cause to believe that a traffic violation has occurred." *Burris v. State*, 330 Ark. 66, 71, 954 S.W.2d 209, 212 (1997). *See Whren v. United States*, 517 U.S. 806 (1996); *Wilburn v. State*, 317 Ark. 73, 876 S.W.2d 555 (1994). *See also* Ark. R. Crim. P. 4.1(a) (2016) (permitting warrantless arrest if officer has "reasonable cause" to believe that defendant has committed "any violation of law in the officer's presence"). "[T]he relevant inquiry is whether [the officer] had probable cause to believe that [the defendant] was committing a traffic offense at the time of the initial stop." *Burris*, 330 Ark. at 72, 954 S.W.2d at 212. We have previously explained that probable cause exists when the facts and circumstances within an officer's knowledge are sufficient to permit a person of reasonable caution to believe that an offense has been committed by the person suspected. *Hudson v. State*, 316 Ark. 360, 872 S.W.2d 68 (1994); *Johnson v. State*, 299 Ark. 223, 772 S.W.2d 322 (1989). In assessing the existence of probable cause, our review is liberal rather than strict. *Brunson v. State*, 327 Ark. 567, 940 S.W.2d 440 (1997).

Watkins testified that he witnessed appellant's vehicle cross the fog line onto the shoulder, which had ice from a recent winter storm covering it, several times. The circuit

court found that this gave Watkins probable cause to stop appellant pursuant to Arkansas Code Annotated section 27-51-104, which, inter alia, makes it unlawful for a person to operate a vehicle in a careless manner or in such a manner to evidence or cause a failure to maintain control.[5] Appellant contends that no probable cause existed because there is no video evidence of his vehicle crossing the line; if he crossed the line it did not violate section 27-51-104; and if he crossed the line it was reasonable due to the icy roadway. There is no requirement that the traffic violation be observed on video, and appellant points to no authority to support that proposition. The testimony was that the shoulder, not the roadway, was covered in ice. Crossing the fog line onto an icy shoulder several times can reasonably be considered failure to maintain proper control. We hold that the trial court did not err in concluding that Watkins had probable cause to stop appellant.

Appellant next argues that the trial court erred in finding that the continued detention by Watkins for almost one hour was legal. Arkansas Rule of Criminal Procedure 3.1(2016) provides that

> A law enforcement officer lawfully present in any place, may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if

---

[5] The trial court also found that Watkins had the authority to stop appellant in his capacity as a DOT-certified officer. Appellant does not challenge that basis for the stop on appeal. Generally, when an appellant fails to attack an independent, alternative basis for a trial court's ruling, we will not reverse the trial court's finding. *See Pugh v. State*, 351 Ark. 5, 89 S.W.3d 909 (2002). However, in this instance, while Watkins asserted that he had the authority to stop appellant for inspection, it is unclear from his testimony at the suppression hearing that he stopped appellant for that specific purpose. Watkins clearly asserted that he stopped appellant due to the observed traffic violation. Under these circumstances, we have elected to review the primary basis for the stop instead of affirming based on the apparent independent, alternative basis found by the trial court.

such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. An officer acting under this rule may require the person to remain in or near such place in the officer's presence for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances.

"Reasonable suspicion" is defined as "a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion." Ark. R. Crim. P. 2.1 (2016). Whether there is reasonable suspicion depends on whether, under the totality of the circumstances, the police have specific, particularized, and articulable reasons indicating that the person may be involved in criminal activity. *Laime v. State*, 347 Ark. 142, 155, 60 S.W.3d 474, 473 (2001).

According to Watkins, he developed a suspicion that appellant was engaged in criminal activity based on appellant's argumentativeness when he was initially stopped, his nervousness, and the irregularities in his paperwork. Appellant argues that Watkins's testimony was incorrect and that he was neither argumentative nor nervous, and that he presented proper paperwork. Appellant's argument rests on credibility determinations and the weight to be given to the evidence. This is a function of the trial court and we defer to its superior position to determine the credibility of witnesses and the weight to be given to the evidence. *See Fuson v. State*, 2011 Ark. 374, 383 S.W.3d 848. The trial court heard the evidence and credited Watkins's testimony over appellant's.

It is undisputed that the stop took approximately one hour. In this case, the length of the stop does not provide a basis to reverse the trial court's findings. Appellant does not

11

contest that Watkins, in his role as a DOT officer, had the authority to conduct an inspection. The video contains long stretches of silence, which Watkins explained were due to his having to review all of appellant's paperwork and type up the inspection report. The trial court was permitted to credit this testimony and determine that the length of time was necessary for Watkins to perform his various tasks. We hold that the trial court did not err in determining that the length of the stop was justified, and we affirm on this point.

Appellant next argues that the stop was pretextual and equivalent to an arrest. As discussed above, the trial court found that Watkins had a legitimate reason to stop appellant based on his observation of the automobile carrier crossing the fog line. Regarding appellant's assertion that his detention was equivalent to an arrest, he neither develops the argument nor does he cite convincing authority in support of his assertion. This court will not develop arguments for parties. *Sims v. State*, 2015 Ark. 363, 472 S.W.3d 107. We affirm on this point.

Appellant's final argument is that the trial court erred in finding that his consent to the search was freely given. The State has the burden of proving by clear and convincing evidence that consent to search was freely and voluntarily given and that there was no actual or implied duress or coercion. Ark. R. Crim. P. 11.1(b) (2016). The United States Supreme Court has held that the test for a valid consent to search is that the consent be voluntary, and "[v]oluntariness is a question of fact to be determined from all the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 40 (1996) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 248–49 (1973)). The video of the stop clearly shows appellant responding "Nope, not at all" when asked if he would mind Watkins performing a search. Although appellant argues that

he only agreed because he felt like he would have been unable to leave otherwise, the trial court was not required to believe him. *See Jones v. State*, 344 Ark. 682, 42 S.W.3d 536 (2001). After hearing the testimony at the suppression hearing and reviewing the evidence, the trial court determined that appellant's consent to the search was freely given. We see no basis to conclude that the trial court's finding on this point is clearly erroneous, and we affirm.

Affirmed; court of appeals opinion vacated.

*Jeff Rosenzweig*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Amanda Jegley*, for appellee.