Cite as 2019 Ark. App. 572

# ARKANSAS COURT OF APPEALS

DIVISIONS I, III & IV
**No.** CR-18-1057

|  |  |
|---|---|
| RODNEY HARMON | **Opinion Delivered** December 4, 2019 |
| APPELLANT | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23CR-15-702] |
| V. | HONORABLE CHARLES E. CLAWSON, JR., JUDGE |
| STATE OF ARKANSAS | AFFIRMED IN PART; REVERSED AND REMANDED IN PART |
| APPELLEE |  |

### LARRY D. VAUGHT, Judge

Rodney Harmon appeals his convictions by a Faulkner County Circuit Court jury of trafficking methamphetamine within 1,000 feet of a school-bus stop, simultaneous possession of drugs and firearms, possession of drug paraphernalia, and maintaining a drug premises within 1,000 feet of a school-bus stop. Harmon was sentenced to an aggregate term of forty years' imprisonment in the Arkansas Department of Correction ("ADC"). On appeal, he asserts that the circuit court erred (1) by refusing to direct the State to obtain possibly existing video of the search of Harmon's home; (2) by denying the defense's request for a continuance; (3) by granting the State's motion in limine to exclude testimony regarding HBO documentary filmmakers who may have filmed the search of Harmon's home; (4) in allowing a nonmodel jury instruction on the trafficking charge; and (5) by allowing the State to play a recording

during the penalty phase of the trial of Harmon making a controlled drug buy through an informant who was not present to testify. We affirm in part and reverse and remand in part.

The charges arose from the execution of a search warrant for Harmon's home in Vilonia on September 17, 2015. Officers of the Twentieth Judicial District Drug Task Force, the Faulkner County Sheriff's Office, and the United States Drug Enforcement Agency conducted the search. An HBO documentary film crew was present pursuant to an agreement with law enforcement. The crew consisted of two documentarians—the Renaud brothers— and a camera operator. They were working on a documentary entitled *Meth Storm*, which subsequently aired on the HBO network. The filmmakers did not participate in the search but filmed it. The search of Harmon's home was not in the aired documentary, but the credits for the documentary thanked the judge and the deputy prosecuting attorney who handled Harmon's case.

The presence of the film crew was unknown to the prosecutor for more than a year after the search took place. On January 24, 2017, the prosecutor learned of the documentary and alerted the defense to the film crew's presence at the search. The prosecutor stated that she did not have any of the film footage but provided contact information for one of the documentarians who was present at the search, Craig Renaud.

On January 30, Harmon filed a motion for a continuance on the basis of this new information, which was granted. The court held a hearing on February 3, at which defense counsel raised the issue of whether the HBO film crew could be considered agents of the State because they had been granted permission to be there by the DEA and local officials. Counsel argued that whatever footage might exist could be relevant and subject to disclosure, and

2

depending on the contents, the defense might want to file an amended motion to suppress. The prosecutor explained that the State did not possess any of HBO's video footage, that she had contacted HBO to try to obtain it, and that she had not been successful. She stated that she had provided the defense with all the information she had.

Throughout the succeeding months, Harmon sought both the video and the identities of all people who were present at the search of his home, but he was unable to obtain this evidence. The circuit court issued an order to "whomever shall be in possession and/or ownership" of the video, but the court denied Harmon's request for an order requiring the prosecution to obtain and provide it, rejecting Harmon's argument that the producers were State actors at the time of the search. The court also denied Harmon's motion for a continuance of the trial until the video was obtained and all persons present were identified. The court further granted the prosecution's motion in limine to forbid mention of the fact that HBO personnel were present at the search. Following the court's ruling that Harmon could not mention at trial the presence of the film crew at the search, he proffered testimony of two officers regarding why they had intentionally chosen not to list the film crew when writing reports and documents about the search. The court also issued an order for the benefit of the defense to the persons who were in control of the recording requiring them to provide this information, but the defense was not able to locate the recording or even get in touch with the people who would have had control of it.

On June 12, 2018, the State filed a motion to use a non-AMI jury instruction on the trafficking charge. The State proffered a jury instruction that added a series of factors for the jury to consider. This part of the modified instruction was pulled from the model instruction

3

for a different offense, possession with purpose to deliver. The court allowed the non-AMI jury instruction. Harmon proffered the standard AMI instruction and objected to the State's request for a non-AMI instruction.

Harmon was convicted of trafficking methamphetamine within 1,000 feet of a school bus stop, simultaneous possession of drugs and firearms, possession of drug paraphernalia, and maintaining a drug premises within 1,000 feet of a school-bus stop. During the penalty portion of the trial, the State moved to introduce video recordings of drug purchases that Harmon allegedly made from a confidential informant, Shannon Daniels, who was not present to testify. Harmon objected, arguing that the evidence was more prejudicial than probative, and the court overruled his objection. The jury imposed an aggregate forty-year sentence.

Questions of law, such as the interpretation of discovery rules found in the Arkansas Rules of Criminal Procedure, are reviewed de novo. *Muhammad v. State*, 67 Ark. App. 262, 265, 998 S.W.2d 763, 763 (1999). However, when we review a court's rulings regarding alleged violations of the rules of discovery, the standard of review is abuse of discretion. *Hicks v. State*, 340 Ark. 605, 612, 12 S.W.3d 219, 223 (2000). The standard of review for denial of a continuance is also abuse of discretion. *Price v. State*, 365 Ark. 25, 33, 223 S.W.3d 817, 824 (2006). Likewise, the standard of review for admission or rejection of evidence is abuse of discretion. *O'Neal v. State*, 356 Ark. 674, 683, 158 S.W.3d 175, 181 (2004).

Harmon's first point on appeal is a challenge to the court's denial of his request to require the prosecution to obtain the HBO video footage of the search of his home and produce it in response to his discovery requests. Harmon concedes that the analysis on this issue hinges on whether the documentary filmmakers should be deemed State actors, which

4

he describes as a "novel question." Indeed, Harmon cites no authority for the assertion that documentary filmmakers present during the search of a home are considered State actors. The sum of his argument is that "[t]he State cannot accept the benefit of the bargain with the production company—i.e. the presumably good publicity—and then disclaim the obligations going along with it. To have any other rule would be to invite chaos and unaccountability in law enforcement."

Harmon has cited a series of cases, none of which are directly on point. Regarding whether the film crew could be considered State actors, Harmon relies on *Wilson v. Layne*, 526 U.S. 603 (1999), in which the United States Supreme Court established Fourth Amendment boundaries for ride-along film crews, holding that while executing an arrest warrant on private property, police who invite representatives of the media to accompany them can be held in violation of the Fourth Amendment's prohibition of unreasonable search and seizure. *Wilson* is a Fourth-Amendment case that deals with the added intrusion of having a film crew brought into one's home during a search. Harmon has not alleged a Fourth-Amendment violation, and *Wilson* simply does not support his argument that the "good publicity" generated by the HBO documentary caused the filmmakers to rise to the level of State actors for discovery purposes.

Harmon also cites *Pointer v. Texas*, a confrontation-clause case in which the Supreme Court held that it was unconstitutional for the court to allow a transcript of a witness's prior testimony to be admitted when the defendant could not cross-examine the witness. 380 U.S. 400, 404 (1965). Again, this case is simply not on point because the prosecution did not attempt to introduce any evidence related to the HBO documentary.

Harmon further relies on *Brady v. Maryland*, in which the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). Harmon asserts that his due-process rights were violated because the State was obligated to provide the video as exculpatory evidence. Harmon's reliance on *Brady* is misplaced because he has not established an obligation to produce evidence that the prosecution never possessed. Moreover, the video was never demonstrated to be evidence favorable to the accused, and the facts of this case do not support the conclusion that this evidence was suppressed. The State made numerous attempts to obtain the evidence but, like the defense, was unable to do so.

Harmon next cites *Foreman v. State*, 328 Ark. 583, 590, 945 S.W.2d 926, 929–30 (1997), in which our supreme court recited the standard for the necessity of producing witnesses to a custodial statement:

> Statements given by accused persons who are in police custody are presumed to be involuntarily given; thus, the burden is on the State to prove voluntariness. As a part of overcoming that burden, the State must produce at a [*Jackson v.*] *Denno* [378 U.S. 368 (1964)] hearing all of the persons who were witnesses to the taking of the statement or explain their absence. When the necessary witnesses are not produced, and no satisfactory explanation of their absence is forthcoming, we hold that evidence of the accused that his statement was involuntarily given "stands uncontradicted."

Harmon focuses on the requirement that the State must produce all witnesses and likens the search of his home to a custodial statement in order to invoke such a rule here. *Foreman* is not on point to the issue before us in the present appeal, and we decline Harmon's invitation to hold that searches of one's home should be governed by the same rules applicable to custodial statements.

6

The most relevant precedent is *Barrow v. State*, 2010 Ark. App. 589, 377 S.W.3d 481, which does not warrant reversal. Barrow was charged with sexual misconduct and argued that the State violated discovery requirements by failing to provide information concerning the victims' medical treatment. Barrow argued that "the prosecutor was in a close relationship with the victims by representing their interests and also had a relationship with police officers," both of whom possessed information that was relevant to his defense, and that such information should be imputed to the prosecution for discovery purposes. *Barrow*, 2010 Ark. App. 589, at 12, 377 S.W.3d at 489–90. Our court held that the issue was not preserved; however, we offered an alternative decision that the "open file" policy meant that the defense had access to any information the State had and that if "appellant thought that the victims' medical records might have assisted his defense, he could have conducted his own investigation instead of solely relying on discovery." *Id.* at 13, 377 S.W.3d at 490. The most relevant holding in *Barrow* is the response to Barrow's assertion that the medical records could have provided exculpatory evidence to be used in cross-examination:

> That argument presupposes that the State had access to and knowledge of the records and their contents, which appellant has failed to demonstrate. To the contrary, the prosecutor informed the circuit court that the State did not possess or have access to the victims' medical records. Because the medical facilities are not law-enforcement agencies, the prosecutor had no duty to obtain the records under Rule 17.3. In the absence of a showing by appellant that the State had access to the records, no discovery violation occurred.

*Id.* at 14, 15, 377 S.W.3d at 490. As in *Barrow*, Harmon has failed to show that the State had access to the HBO film, and without such a showing, there is no discovery violation.

Harmon has not demonstrated that Arkansas Rules of Criminal Procedure 17.1(c) and 17.4(a) are applicable here. Rule 17.1(c) sets forth that the prosecuting attorney shall, upon

timely request, disclose and permit inspection, testing, copying, and photocopying of any relevant material regarding any specific searches and seizures. The prosecuting attorney did not have the "relevant material" regarding the search and seizure to disclose or permit inspection of. Moreover, there was testimony that when the prosecuting attorney learned of the film crew's presence, she contacted defense counsel and gave them all the information she had.

Rule 17.4 provides that the court in its discretion may require disclosure to defense counsel of other relevant material and information upon a showing of materiality to the preparation of the defense. Rule 17.4 has no bearing on the instant case because, again, the State did not possess any HBO footage to disclose.

Because Harmon has failed to cite any convincing authority to establish that the prosecution had an affirmative duty to obtain the video footage, his discovery-violation argument fails. We find no reversible error on this point.

Harmon's second point on appeal is a challenge to the court's denial of his motion for a continuance. On the day of the trial, Harmon moved for a continuance "based on the inability to obtain the video and names and contact information of the HBO personnel." Harmon argues that a continuance to obtain this information and evidence was necessary "for both substantive defense and for possible relitigation of the motion to suppress."

Upon the request of a party, the circuit court may grant a continuance, but the movant has the burden of showing good cause. *Barrow*, 2010 Ark. App. 589, at 9, 377 S.W.3d at 488. The circuit court's decision to grant a continuance will be reversed only if an appellant can demonstrate an abuse of discretion. *Barnes v. State*, 346 Ark. 91, 55 S.W.3d 271 (2001). A circuit

8

court should consider the following factors in deciding a continuance motion: (1) the diligence of the movant; (2) the probable effect of the testimony at trial; (3) the likelihood of procuring the attendance of the witness in the event of a postponement; and (4) the filing of an affidavit, stating not only what facts the witness would prove, but also that the appellant believes them to be true. *Miller v. State*, 328 Ark. 121, 124, 942 S.W.2d 825, 827 (1997).

Here, the circuit court did not abuse its discretion in refusing to grant Harmon's request for a continuance. First, a six-month continuance had already been granted by the court to give the defense time to obtain the video. Also, as the State points out, Harmon did not subpoena HBO despite having received the court order allowing the defense to do so a month before trial. Harmon did not request the continuance until the day of trial, there was no evidence of the probable effect the film would have had on the outcome of the case, and there was little likelihood that a continuance would result in the successful acquisition of the film given the fact that neither the prosecution nor the defense had been able to obtain it after significant efforts to do so. Furthermore, Harmon did not file an affidavit stating what the evidence would demonstrate if he were able to obtain the video because no one knew what the video might show. The court's denial of his request for a continuance did not constitute an abuse of discretion.

Harmon also claims that the circuit court erred in excluding testimony related to the HBO film crew and the video based on its finding that such evidence would be confusing to a jury. Harmon contends that "the presence of undisclosed persons at the scene of the alleged offense and the fact that the events were recorded but the recording was not provided is something which any defendant would use to show reasonable doubt." Although relevant,

9

evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence. Ark. R. Evid. 403; *Smith v. State*, 354 Ark. 226, 240, 118 S.W.3d 542, 550 (2003). A circuit court's ruling on relevancy and matters pertaining to the admissibility of evidence are left to the sound discretion of the circuit court and will not be reversed absent an abuse of that discretion. *O'Neal,* 356 Ark. at 683, 158 S.W.3d at 181.

An abuse of discretion is a high threshold that does not simply require error in the circuit court's decision, but requires that the circuit court acted improvidently, thoughtlessly, or without due consideration. *Id.* Moreover, an appellate court will not reverse a circuit court's evidentiary ruling absent a showing of prejudice. *Id.*

The court ruled that testimony regarding HBO film footage that had not been located or produced would likely confuse the jury. We see no abuse of discretion in the court's ruling that testimony regarding video evidence that may not even exist could confuse the jury. None of the parties claim to know the location or contents of the video, and Harmon cites no authority to support his argument that he should have been allowed to discuss its absence at trial. Exclusion of trial testimony regarding the lack of video footage was not an abuse of discretion.

Harmon also alleges that the circuit court erred in both denying his proffered AMI instruction on trafficking and granting the prosecution's request to instruct the jury using a nonmodel instruction. A circuit court's decision whether to give a jury instruction will not be reversed unless it constitutes an abuse of discretion. *Vidos v. State*, 367 Ark. 296, 308, 239

10

S.W.3d 467, 476 (2006). A party is entitled to a jury instruction when it is a correct statement of the law and when there is some basis in the evidence to support giving the instruction. *Id.* Nonmodel jury instructions should be given only when the court finds that the model instructions do not accurately state the law or do not contain a necessary instruction. *Bond v. State*, 374 Ark. 332, 340, 288 S.W.3d 206, 212 (2008). Finally, a circuit court's refusal to give an instruction is not reversible error unless its omission infects the entire trial such that the conviction violates due process. *Hickman v. State*, 372 Ark. 438, 444, 277 S.W.3d 217, 222 (2008).

The jury instruction in question relates to the charge of trafficking methamphetamine pursuant to Arkansas Code Annotated section 5-64-440, which provides that a person engages in trafficking a controlled substance if he or she possesses, possesses with the purpose to deliver, delivers, or manufactures a controlled substance—in this case methamphetamine—by aggregate weight, including an adulterant or diluent, of a specified amount—here, in two hundred grams. Ark. Code Ann. § 5-64-440 (Repl. 2016).

The prosecution requested a non-AMI instruction on the trafficking charge. The circuit court permitted the use of the non-AMI instruction. Harmon proffered AMI instruction 64.440 and objected to the State's request for a non-AMI instruction. The State's proposed non-AMI instruction, which was allowed by the court and read to the jury, used the AMI instruction but added additional information to the AMI instruction. Specifically, it added six factors that the jury could use to determine whether Harmon had "purpose to deliver."

11

The non-AMI instruction that was given to the jury reads as follows. The portions underlined are the parts of the instruction that were added in a deviation from the model instruction:

Rodney Harmon is charged with the offense of trafficking methamphetamine. To sustain this charge, the State must prove beyond a reasonable doubt; first, that Rodney Harmon possessed or possessed with the purpose to deliver more than 200 grams by aggregate weight including an adulterant or dilutant of methamphetamine; and, second, that he did so knowingly or purposefully.

Purpose to deliver may be shown by evidence that you find beyond a reasonable doubt proves Rodney Harmon's purpose to deliver methamphetamine. The evidence which you may consider along with all the facts and circumstances of the case include any of the following factors:

• Defendant possessed the means to weigh, separate, or package methamphetamine; or

• Defendant possessed a record indicating a drug related transaction; or

• The methamphetamine was separated and packaged in a manner to facilitate delivery; or

• Defendant possessed a firearm that was in his immediate physical control at the time of the possession of the methamphetamine; or

• The Defendant possessed at least two other controlled substances in any amount; or

• Other evidence that contributes to prove the Defendant's purpose was to deliver methamphetamine.

And these definitions are applicable:

Knowingly, a person acts knowingly with respect to his conduct or attendant circumstances when he is aware that his conduct is of that nature or that such circumstances exists. A person acts knowingly with respect to a result of his conduct when he is aware that it is practically certain that his conduct will cause such a result.

Possession, there are two kinds of possession, actual and constructive. Actual possession of a thing is a direct physical control over it. Constructive possession exists when a person, although not in actual possession of that thing, has a right to control it

12

and intends to do so. If two or more persons share actual or constructive possession of a thing, either or both may be found to be in possession.

Purposely, a person acts purposely with respect to his conduct or a result thereof when it is his conscious object to engage in conduct of that nature or to cause such a result.

The State argued that the model instruction, which does not contain the factors listed above, is insufficient. Harmon did not dispute that the factors listed above are appropriate for the jury to consider but argued that the model instruction should not be modified because it is an accurate statement of the law. Harmon also noted that the jury would be instructed on possession of methamphetamine with purpose to deliver as a lesser-included offense to trafficking and that the factors listed in the State's proposed non-AMI instruction would be available to the jury in the separate AMI instruction for that charge.

The court found that "purpose to deliver does not mean . . . a different thing in trafficking than it does in purpose to deliver" and granted the State's request to give the jury a non-AMI jury instruction that contained factors not found in the model instruction.

The Arkansas Supreme Court has repeatedly held that a non-AMI instruction should be given *only* when the AMI instruction does not accurately state the law or does not contain an instruction on the subject. *Ventress v. State*, 303 Ark. 194, 794 S.W.2d 619 (1990); *Henderson v. State*, 284 Ark. 493, 684 S.W.2d 231 (1985). Since there is an AMI instruction on the elements necessary to prove trafficking—AMI 2d 64.44—it was improper to give a non-AMI instruction if the AMI instruction is an accurate statement of the law.

The State does not argue that the AMI instruction is an inaccurate statement of the law. The model instruction clearly tracks the plain language of the trafficking statute. Ark. Code Ann. § 5-64-440. The statute itself does not contain the factors that the State added into

13

its non-AMI instruction. Instead, the State argues that it was proper to import additional language from AMI 2d 64.420 (possession with intent to deliver) to make the trafficking instruction clearer and easier for the jury to understand and apply.

While we will not reverse a circuit court's decision to give or reject a jury instruction unless the court abused its discretion, *e.g.*, *Wallace v. State*, 2018 Ark. App. 451, at 7, 558 S.W.3d 907, 910, our legal standard for when a court may use a non-AMI instruction leaves very little room for discretion. In *Pokatilov v. State*, 2017 Ark. 264, at 7–8, 526 S.W.3d 849, 857, for example, the Arkansas Supreme Court held that "a non-model instruction is only to be given when the model instruction does not correctly state the law or where there is no model rule on the subject." Our case law demonstrates that a circuit court is *obligated* to give the model instruction if it is an accurate statement of law. Here there is no argument that the model instruction was inaccurate; the State and the court simply believed that adding additional factors to the model instruction made it clearer for the jury to understand. These additional factors are not found in the trafficking statute and were imported from the model instruction for a different offense (possession with intent to deliver). Finally, the "Note on Use" provided for AMI 2d 64.440 specifically states:

> Possession with the purpose to deliver was added to trafficking in Act 529 of 2013, section 4, and the legislation did not include the factors to be considered. Compare section 5 of Act 529 which lists factors with respect to Ark. Code Ann. § 5-64-442 and Ark. Code Ann. § 5-64-420. The committee has followed Act 529 and has not included the factors in this instruction.

It is clear, therefore, that the factors were intentionally omitted from the model instruction, and the court had no discretion to deviate from the model instruction to add those factors in this case. We therefore reverse and remand Harmon's trafficking conviction. The circuit court

14

abused its discretion because it violated our clearly established legal standard dictating when a circuit court may deviate from a model instruction.

We reject the argument that the court's error in modifying the model instruction was harmless. The State argues that because Harmon agreed that the factors were legally applicable to the trafficking offense (despite not being found in the trafficking statute), he essentially waived any argument as to prejudice. However, our standard is quite different:

> In cases involving a trial court's giving of an erroneous instruction involving the trial mechanism to be used in deciding either a civil or criminal case, we will not require the appellant to demonstrate prejudice. Such a requirement is often an impossible burden, and the requirement of an impossible burden, in effect, renders the requirement of correct instructions on the law meaningless. Said another way, prejudice will be presumed from the giving of an erroneous instruction unless some additional factor makes it clear that the erroneous instruction was harmless. If this were an attempt to make a finding as to whether appellant was prejudiced by the improper instruction, we would only engage in speculation, applying our view of what a reasonable jury would have done.

*Napier v. State*, 74 Ark. App. 272, 276, 46 S.W.3d 565, 568 (2001) (internal citations omitted). In *Napier*, we made this standard even more concrete, holding that "[a]n appellee, however, may still demonstrate that the giving of an erroneous instruction was harmless, where the jury demonstrably was not misled because the jury rejected the theory of the erroneous instruction, and where the erroneous instruction was obviously cured by other instructions." *Id.* (citing *Cates v. Brown*, 278 Ark. 242, 645 S.W.2d 658 (1983); *Moore v. State*, 252 Ark. 526, 479 S.W.2d 857 (1972)). The court in *Napier* relied on *Cates*, in which the Arkansas Supreme Court found no prejudice from an erroneous jury instruction because the jury had found for the appellant on the issue covered by that instruction.[1] The appellant could not show prejudice because he

---

[1]In *Cates*, the court stated,

15

had prevailed on the very issue about which the erroneous instruction was given. That is not the case here; Harmon was convicted of trafficking using the erroneous instruction. Here, we cannot say that "the jury demonstrably was not misled because the jury rejected the theory of the erroneous instruction, and . . . the erroneous instruction was obviously cured by other instructions." *Napier*, 74 Ark. App. at 276, 46 S.W.3d at 568. We reverse and remand Harmon's trafficking conviction.

Harmon's final point on appeal is a challenge to the court's admission, over Harmon's objection, during the penalty phase of the trial, of recordings of an informant, Shannon Daniels, allegedly making controlled drug buys from Harmon. The only argument that Harmon preserved below regarding this evidence was his claim that it was more prejudicial than probative and therefore should have been excluded under Arkansas Rule of Evidence 403. The circuit court overruled the objection and also denied Harmon's motion for a continuance to allow more time to locate Daniels. Harmon contends that this court should modify the sentence to the statutory minimum due to the prejudice that occurred by allowing the recorded drug buys to be admitted during the penalty phase. He cites no case law or authority for his position.

---

Billy Cates next contends that the trial court committed reversible error by the giving of an instruction on the standard of care for a contractor. A.M.I. Civil 2d 1204. There is no basis in the record for the instruction and it should not have been given. However, the verdict rendered the error harmless since the jury found against appellees on the issue involved in the instruction. The giving of an erroneous instruction is harmless error where the jury was not misled or the jury rejects the theory of the instruction. *Bussell v. Mo. Pac. R.R. Co.*, 237 Ark. 812, 376 S.W.2d 545 (1964).

*Cates*, 278 Ark. at 247, 645 S.W.2d at 661.

16

Although evidence is relevant, it may nonetheless be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice." Ark. R. Evid. 403. Further, "[t]he fact that evidence is prejudicial to a party is not, in itself, reason to exclude evidence. The danger of unfair prejudice must substantially outweigh the probative value of the evidence." *Branstetter v. State*, 346 Ark. 62, 74, 57 S.W.3d 105, 113 (2001). Lastly, bare conclusory allegations regarding prejudice are not sufficient to carry an appellant's burden on appeal. *See Diemer v. State*, 365 Ark. 61, 67, 225 S.W.3d 348, 352 (2006).

Here, Harmon's argument is not well developed and appears to be a conclusory allegation of prejudice from the admission of relevant evidence. We find no reversible error on this point.

Affirmed in part; reversed and remanded in part.

GRUBER, C.J., and HARRISON, HIXSON, and BROWN, JJ., agree.

VIRDEN, KLAPPENBACH, SWITZER, and MURPHY, JJ., concur in part and dissent in part.

**BART F. VIRDEN, Judge, concurring in part and dissenting in part**. The dissent in this case is limited to the issue of the jury instruction. In all other aspects, I agree with the majority opinion. I would affirm the circuit court's decision to give a non-AMI jury instruction on the trafficking charge.

A circuit court's decision whether to give an instruction will not be reversed unless the court abused its discretion. *Vidos v. State*, 367 Ark. 296, 239 S.W.3d 467 (2006). A party is entitled to a jury instruction when it is a correct statement of the law and when there is some basis in the evidence to support giving the instruction. *Id.* Nonmodel instructions are

17

to be given only when the circuit court finds that an AMI instruction either does not accurately state the law or AMI does not contain an instruction on the needed subject. *Bond v. State*, 374 Ark. 332, 288 S.W.3d 206 (2008); *Wallace v. State*, 2018 Ark. App. 451, at 7, 558 S.W.3d 907, 910.

Harmon was convicted of one count of trafficking methamphetamine, a violation of Ark. Code Ann. § 5-64-440, which provides that it is unlawful for a person to engage in trafficking a controlled substance. A person engages in trafficking a controlled substance if he or she possesses, possesses with the purpose to deliver, delivers, or manufactures a controlled substance—in this case methamphetamine—by aggregate weight, including an adulterant or diluent; here, two hundred grams. *Id.* The model jury instruction tracks the statute but does not include the following six factors that the jury must consider in determining whether Harmon acted with the purpose to deliver:

> (1) The person possesses the means to weigh, separate, or package a counterfeit substance;
>
> (2) The person possesses a record indicating a drug-related transaction;
>
> (3) The counterfeit substance is separated and packaged in a manner to facilitate delivery;
>
> (4) The person possesses a firearm that is in the immediate physical control of the person at the time of the possession of the counterfeit substance;
>
> (5) The person possesses at least two (2) other controlled substances or counterfeit substances in any amount; or
>
> (6) Other relevant and admissible evidence that contributes to the proof that a person's purpose was to deliver a counterfeit substance.

Both the State and Harmon agreed that the jury would consider the six factors and that the instruction was necessary; however, Harmon asserts that the nonmodel instruction

18

should not have been given because the jury was able to refer to a lesser-included instruction and find the definition of "purpose with intent" there. Though it was possible that the jury could have flipped back and forth through the instructions to locate the six factors, I find no abuse of discretion in the court's decision that the six factors—a necessary instruction—should be included with the model instruction for trafficking.

Moreover, I do not agree that *Pokatilov v. State*, 2017 Ark. 264, 526 S.W.3d 849, supports the majority's reversal on this point. In *Pokatilov*, our supreme court affirmed the circuit court's use of discretion in refusing to give a non-AMI instruction, stating that "just because a proffered instruction may be a correct statement of the law, that does not mean a circuit court must give the instruction to the jury." *Id*. at 7–8, 526 S.W.3d at 856 (citing *Walley v. State*, 353 Ark. 586, 112 S.W3d 349 (2003)). The perspective here is critical: in *Pokatilov*, our supreme court affirmed the circuit court's decision to present the AMI jury instruction. *Pokatilov* sets forth that a circuit court is not *required* to give a nonmodel instruction if it is a correct statement of the law and that a nonmodel instruction is only to be given when the model instruction does not correctly state the law or when there is no model rule on the subject. Here, the model rule lacked the necessary instruction on the subject.

I would afford the circuit court in the instant case the same exercise of discretion and affirm the circuit court's decision when it, in its discretion, found the non–AMI instruction to contain a necessary instruction.

SWITZER and MURPHY, JJ., join.

19

**N. MARK KLAPPENBACH, Judge, concurring in part and dissenting in part**.

I write separately to dissent from the majority's opinion only on the issue of the jury instruction. I would affirm the methamphetamine-trafficking conviction because, even assuming there was error in giving the nonmodel jury instruction, any error was harmless.

The model jury instruction was modified slightly but only to define the factors the jury could consider in deciding whether the State had proved "purpose to deliver." The factors are legally accurate, a fact not disputed by appellant. It is unfathomable how the jury could be confused or misled by being provided legally applicable factors it could consider. Those same legally accurate factors were repeated in the jury instruction that was given to the jury on the lesser-included offense to methamphetamine trafficking.

As explained in *Napier v. State*, 74 Ark. App. 272, 276, 46 S.W.3d 565, 568 (2001), "prejudice will be presumed from the giving of an erroneous instruction unless some additional factor makes it clear that the erroneous instruction was harmless," which can be shown when the jury demonstrably was not misled. *Id.* Assuming the jury instruction was "erroneous" because it was more amplified than the model jury instruction, I agree with the State's contention that any presumed error was harmless. Appellant fails to even respond to the harmless-error analysis. I would affirm the methamphetamine-trafficking conviction because the circuit court's giving of the modified jury instruction was harmless.

*Jeff Rosenzweig*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Christian Harris*, Ass't Att'y Gen., for appellee.