Cite as 2020 Ark. App. 465

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CR-20-149

| | |
|---|---|
| DERTAVIOUS CAIN | **Opinion Delivered:** October 7, 2020 |
| APPELLANT | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. 35CR-18-583] |
| V. | |
| STATE OF ARKANSAS | HONORABLE ROBERT H. WYATT, JR., JUDGE |
| APPELLEE | AFFIRMED |

## MEREDITH B. SWITZER, Judge

Dertavious Cain was tried by the Jefferson County Circuit Court and found guilty of one count of simultaneous possession of drugs and firearms, one count of possession of cocaine with intent to deliver, and one count of possession of marijuana with intent to deliver.[1] For his sole point of appeal, Cain contends the circuit court erred in denying his motions for dismissal because the State failed to present substantial evidence that he actually or constructively possessed the firearm, cocaine, and marijuana. We affirm.

This case was tried on November 21, 2019. Tamica Oswalt testified that she was employed by the Pine Bluff Police Department Violent Crimes Unit on September 26, 2018, when she and her partner were patrolling in an unmarked vehicle. They noticed a vehicle with a broken headlight but did not initiate a traffic stop until the vehicle ran a red

---

[1]Cain was also charged with the use or possession with intent to use paraphernalia—i.e., digital scales—to weigh, package, or repackage drugs. That charge was dismissed by the circuit court because there was no evidence of paraphernalia introduced.

light. The tags were valid, but the driver was not able to provide proof of insurance for the vehicle. He had no driver's license, and the intermediate certificate he provided stated that he was not allowed to drive unless accompanied by a licensed driver. Cain was identified as the driver and sole occupant of the car. Oswalt testified that Cain told her the vehicle was not his. He reported that it belonged to his friend's mother. He gave the officer the mother's name but would not reveal his friend's name. He also told them that the mother was out of town. Oswalt explained that they eventually spoke with someone they believed to be the vehicle's owner but that they had the vehicle towed because ownership could not be established with certainty. She stated that Cain was offered the opportunity to leave after he was given a citation, but he did not do so. Cain told her his "home boy was kind of shady and he didn't know what he had in the vehicle and he didn't want to catch any new charges." She described Cain as acting extremely nervous and apprehensive and stated that he did not want to let them in the car.

Officer Oswalt conducted an inventory search of the vehicle. Cain was detained without restraints when the search began. Oswalt explained that in an inventory search, officers check for anything of value in the vehicle prior to having it towed so that when the vehicle is retrieved, everything is listed. She testified that when she bent down with her flashlight and entered the car, she was able to see the gun. Cain was then placed in handcuffs. She said the pistol, with an extended magazine, was underneath the driver's seat. She said the gun was loaded, and the extended magazine could hold thirty rounds. She also found a bag under the driver's seat "in the middle of the long bench seat where the bars connect." The bag contained small, individually wrapped items she believed to be crack rocks. She

2

also located a backpack in the floorboard of the back seat that had several ounces of marijuana in a vacuum-sealed container. She described several other items that were found in the vehicle and in its trunk, which contained identifying information related to other persons. She said she and her partner then contacted a detective and the vice and drug unit.

On cross-examination, Oswalt further explained that when the purported owner was contacted, she said she would not be able to pick up the car, and Oswalt said they could only release it to the owner. She stated that once the vehicle door was opened and the light on, she could see the end of the gun under the driver's seat. She acknowledged that she did not think any of the items found in the vehicle specifically identified Cain. She listed several items found in the car that had the names of other persons in or on them: for example, a bank card belonging to J.S., a backpack (not the one containing the marijuana) that contained something in it relating to T.M., a receipt with a last name that began with "H," some paperwork in the trunk that belonged to C.A., and some documentation in the trunk related to M.W. She explained that Cain's arrest was based on the fact that he was driving the car and in possession of it when the contraband items were found during an inventory search.

Officer Jason Boykin testified that he was working with his partner, Tamica Oswalt, on September 26. He participated in the traffic stop leading to Cain's arrest. He confirmed that there were no other occupants in the car. He stated that he stood with Cain on the outside of the vehicle while Officer Oswalt conducted the inventory search. He explained that department policy required placing the subject in handcuffs for officers' safety if drug paraphernalia or drugs were found inside a vehicle. He said if it is a felony amount, they

3

call the vice and narcotics unit. Boykin said he was there when Detective Richard McCorvey arrived and took photos. He explained it was also department policy to call crime-scene technicians if there was evidence that needed to be secured. Crime-scene technician Erin Mothershed responded to the call, and Boykin was there when she arrived. Boykin stated that he stayed with Cain while the detective and the crime-scene tech processed the scene. On cross-examination, he stated that he was not aware of anything found in the car that identified Cain in any way.

Detective Richard McCorvey testified that he worked with the Pine Bluff Vice and Narcotics Unit and responded to the scene of a traffic stop on September 26. Cain was the vehicle operator. He said that he saw the items recovered from the car, including the handgun found under the front seat, but that it had already been secured in the patrol car when he arrived. He said the plastic bag retrieved from the car contained individually packaged bags with an aggregate weight of nine grams. He suspected the bags contained crack cocaine. He described the marijuana that was found in the floorboard of the back-passenger's seat as weighing approximately one pound, packaged in a vacuum-sealed bag, and contained inside a camouflage-print backpack.

Erin Mothershed testified that she was the crime-scene technician with the Pine Bluff Police Department who responded to the traffic stop involving Cain. She reviewed for the court the crime-scene photographs of evidence retrieved from the vehicle. She acknowledged that the vehicle registration for the car had a name other than Cain's, no fingerprints obtained identified Cain, and nothing in the vehicle had Cain's name on it.

4

Terra Lucas, a forensic chemist with the Arkansas State Crime Laboratory, testified that she tested two samples taken from the vehicle. The greenish-brown, vegetable-like substance that was taken tested positive for marijuana, and the loose off-white, rock-like substances tested positive for cocaine. On cross, she acknowledged that nothing about her testing would tell who had touched, held, or possessed the substances.

Sergeant William Lambert testified that he was employed with the evidence section of the Pine Bluff Police Department. As custodian of the evidence, he testified regarding the identification system and chain of custody of the evidence.

The State rested after Lambert's testimony. Cain's counsel moved for dismissal arguing that the State had failed to prove the additional factors that should be considered regarding automobile cases and constructive possession. In particular, he argued that the marijuana was found in a backpack in the back seat, it had no ties to Cain and was located near other items containing identification related to other persons, and that items in the trunk of the car also identified other persons but not Cain. Counsel argued that the State did not put on substantial proof to show that Cain knew about any of the contraband or that he was in possession of, had knowledge of, or had the right to control it. The circuit court granted the motion to dismiss with respect to the paraphernalia charge (see footnote 1) but denied the motions regarding the remaining charges.

A motion to dismiss in a bench trial is a challenge to the sufficiency of the evidence. *Sharp v. State*, 2019 Ark. App. 506, 588 S.W.3d 770. The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Polk v. State*, 348 Ark. 446, 73 S.W.3d 609 (2002). Substantial evidence

5

is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* When a defendant challenges the sufficiency of the evidence convicting him, the evidence is viewed in the light most favorable to the State. *Id.* Only evidence supporting the verdict will be considered. *Id.*

Circumstantial evidence provides the basis to support a conviction if it is consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Id.* Such a determination is a question of fact for the fact-finder to determine. *Id.* The credibility of witnesses is an issue for the fact-finder. *Id.* The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.* We will disturb the fact-finder's determination only if the evidence did not meet the required standards, thereby leaving the fact-finder to speculation and conjecture in reaching its verdict. *Id.* When we review a challenge to the sufficiency of the evidence, we will affirm the conviction if there is substantial evidence to support it. *Id.*

I. *General vs. Increased Inquiry*

In *Polk*, 348 Ark. at 453, 73 S.W.3d at 614, our supreme court addressed the level of scrutiny applicable in a situation involving a single occupant in a borrowed car or a car owned by another, and explained:

> To date, this court has not determined whether a single occupant in a borrowed car or car owned by another is only subject to the general inquiry for constructive possession, or whether the single occupant may benefit from the increased inquiry afforded those in a joint-occupancy situation. *We hold that in such situations, the State need only prove constructive possession of the contraband without including any inquiry into the elements for joint occupancy.*

(Emphasis added.)

Here, Cain was a single occupant in a borrowed car, purportedly owned by the mother of the young man from whom he borrowed it. Those facts clearly place this case under the *Polk* decision and the general inquiry it applied for constructive possession. We are not convinced that the other items found in the vehicle identifying other persons must shift our analysis toward *Pokatilov v. State*, 2017 Ark. 264, 526 S.W.3d 849. In *Pokatilov*, our supreme court determined that the increased inquiry involving proof of other factors linking the defendant to the contraband was appropriate in a situation involving a single occupant of an automobile-transport truck, where the contraband (marijuana) was not found in the carrier but was instead located in a vehicle that belonged to another person and was being transported by the defendant. In reaching that conclusion, the supreme court cited *McKenzie v. State*, 362 Ark. 257, 208 S.W.3d 173 (2005), wherein the court held that the State was required to prove other factors linking the defendant to contraband when the contraband was located in a trailer of an eighteen-wheel truck. We have concluded that the circumstances presented here are distinguishable from those presented in *Pokatilov* and *McKenzie* because, here, the contraband was located in close proximity to Cain. The heightened inquiry is therefore not required, and the State need only prove constructive possession.

Constructive possession is the control or right to control the contraband. *Bens v. State*, 2020 Ark. App. 6, 593 S.W.3d 495. Constructive possession may be implied when the contraband is found in a place immediately and exclusively accessible to the accused and subject to his or her control. *Id.* Constructive possession may be established by

7

circumstantial evidence, but when such evidence alone is relied on for conviction, it must indicate guilt and exclude every other reasonable hypothesis. *Id*.

## II. *Substantial Evidence Supporting Constructive Possession*

The contraband underlying Cain's convictions are (1) a loaded pistol, with an extended magazine, found underneath the driver's seat; (2) a bag that contained small, individually wrapped items, later confirmed as cocaine, also found under the driver's seat "in the middle of the long bench seat where the bars connect"; and (3) a backpack containing several ounces of marijuana in a vacuum-sealed container, found on the floorboard of the back seat behind the passenger seat. As discussed previously, when a single occupant is in a car owned by another, the State need only prove constructive possession of the contraband without including any inquiry into the elements for joint occupancy, and constructive possession can be implied when the contraband is found in a place immediately and exclusively accessible to the accused and subject to his or her control. *Dyas v. State*, 2020 Ark. App. 52, 593 S.W.3d 55 (citing *Polk*, *supra*).

Officer Oswalt testified that the gun was found under the driver's seat along with the bag containing small, individually wrapped items that later proved to be cocaine. Detective McCorvey testified that the backpack containing the marijuana was found in the floorboard of the back seat behind the passenger seat. These three items of contraband were thus found in places immediately and exclusively accessible to Cain and subject to his control. *See, e.g.*, *Dyas*, *supra* (methamphetamine was found inside a plastic bag that was inside a black bag that was inside a small ice chest located in the front passenger floorboard and visible and accessible from the driver's seat); *see also Bens*, *supra* (officer saw part of a handgun under the

8

driver's seat when the defendant opened the driver's door to retrieve a "blunt"); *Polk*, *supra* (officer saw "a lump" in the rear passenger-side floor mat, and underneath the mat he found a loaded .380 semiautomatic handgun that had been reported as stolen, and although the gun was not visible without moving the floor mat, the "lump" was something that jumped out at the officer).

In addition to evidence of constructive possession, other evidence indicating Cain's guilt included Oswalt's testimony that Cain was extremely nervous; he did not want the officers searching the car; and he volunteered to Oswalt that the person from whom he borrowed the car, "his home boy," was "kind of shady," Cain didn't know what he had in the vehicle, and he didn't want to catch any new charges—all of which support the notion that he knew the car contained contraband. Viewing the evidence in the light most favorable to the State, we do not think the circuit court was left to speculation and conjecture in reaching its verdict and hold that substantial evidence supports Cain's convictions.

Affirmed.

ABRAMSON and BROWN, JJ., agree.

*Digby Law Firm*, by; *Bobby Digby II*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jacob H. Jones*, Ass't Att'y Gen., for appellee.