Cite as 2023 Ark. 12

# SUPREME COURT OF ARKANSAS

No. CR–21–615

|  |  |  |
|---|---|---|
| | | **Opinion Delivered:** February 16, 2023 |
| JEREMEY LEWIS | | |
| | APPELLANT | APPEAL FROM THE CLARK COUNTY CIRCUIT COURT [NO. 10CR-20-36] |
| V. | | |
| | | HONORABLE BLAKE BATSON, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED IN PART; REVERSED AND DISMISSED IN PART. |

**JOHN DAN KEMP, Chief Justice**

Appellant Jeremey Lewis appeals a Clark County Circuit Court sentencing order convicting him of twenty-five counts of possessing or viewing matter depicting sexually explicit conduct involving a child and sentencing him to serve forty-two years in the Arkansas Division of Correction. For reversal, Lewis argues that (1) substantial evidence does not support his convictions; (2) the circuit court erred in denying his motion to suppress evidence; (3) the circuit court abused its discretion by admitting evidence about an allegation that he had raped his daughter; (4) the circuit court abused its discretion by admitting evidence of uncharged child pornography; (5) the circuit court erred by rejecting his facial and as-applied challenges to the constitutionality of Arkansas Code Annotated section 5-27-602 (Repl. 2013); and (6) the circuit court abused its discretion in denying his request for an affirmative-defense jury instruction. We affirm in part and reverse and dismiss in part.

## I. *Facts*

Investigator Sherry Cleek with the Clark County Sheriff's Department testified at trial that she had been "investigating a rape allegation made by [Lewis's] five-year-old daughter." As

part of the investigation, Cleek directed Clark County Investigator Blake Forga and Amity Police Chief B.J. Johns to arrest Lewis.

On January 15, 2020, Investigator Forga and Chief Johns arrived at Lewis's residence in Amity and banged on the door. Lewis came out after several minutes. They took Lewis into custody and as a search incident to arrest, the officers searched his person. At that point, Forga noticed a chain clipped to Lewis's pants, which was attached to a holder containing a cigarette lighter. They removed the lighter, and three microSD cards fell to the ground. Johns and Forga seized the SD cards and placed them in an evidence bag. Forga obtained a warrant before searching the SD cards. Forga viewed the contents of the SD cards and observed what he "believed [was] child pornography—sexual acts involving children[.]"

Forga then obtained a search warrant for Lewis's residence. While executing that warrant, officers seized several electronic devices, including three cell phones and an iPod. Forga provided those devices and the SD cards to the Arkansas State Police. He obtained another search warrant to search the seized devices. Arkansas State Police Special Agent Corwin Battle conducted a forensic examination of the SD cards and the electronic devices. Battle found images that were pornographic in nature involving children. Some were computer-generated imagery (CGI), and some were actual photographs that were not CGI.

Based on images found on an LG cell phone, on an SD card that had been inserted into the phone, and on one of the loose SD cards, Lewis was charged with thirty counts of distributing, possessing, or viewing matter depicting sexually explicit conduct involving a child in violation of Arkansas Code Annotated section 5-27-602. A Clark County jury found Lewis guilty of twenty-five counts, acquitted him of five, and sentenced him to a total of forty-two years in the Arkansas Division of Correction. Lewis filed a timely appeal.

## II. *Points on Appeal*

### A. Sufficiency of the Evidence

Lewis presents several challenges to the sufficiency of the evidence supporting his convictions. First, he argues that the State presented insufficient evidence that he knowingly possessed the images underlying the charged counts because (1) the State never proved that he constructively possessed the LG phone and the SD card that were found in his residence; and (2) in light of the "immense amount of data each device contained," the evidence did not support an inference that he had knowledge of the contraband images on the devices. Second, he argues that the individuals depicted in the CGI do not meet the legal definition of a "child." Third, he argues that, with respect to several counts, no reasonable juror could have determined that the individuals depicted in the images fit within the applicable age parameters for the crime.

A motion for directed verdict is treated as a challenge to the sufficiency of the evidence. *McClendon v. State*, 2019 Ark. 88, at 3, 570 S.W.3d 450, 452. In reviewing this challenge, we view the evidence in a light most favorable to the State and consider only the evidence that supports the conviction. *Id.*, 570 S.W.3d at 452. We will affirm the verdict if substantial evidence supports it. *Id.*, 570 S.W.3d at 452. Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.*, 570 S.W.3d at 452. Evidence is not substantial if the fact-finder is left to only speculation and conjecture in choosing between two equally reasonable conclusions, and merely gives rise to suspicion. *Winston v. State*, 368 Ark. 105, 110, 243 S.W.3d 304, 307–08 (2006). A directed verdict should be granted when there is no evidence from which the jury could have found, without resorting to surmise and conjecture, the guilt of the defendant. *Id.*, 243 S.W.3d at 308. It is the function of the jury, and

3

not the reviewing court, to evaluate the credibility of witnesses and to resolve any inconsistencies in the evidence. *Breeden v. State*, 2013 Ark. 145, at 5, 427 S.W.3d 5, 8–9.

Arkansas Code Annotated section 5-27-602(a) states,

(a) A person commits distributing, possessing, or viewing of matter depicting sexually explicit conduct involving a child if the person knowingly:

(1) Receives for the purpose of selling or knowingly sells, procures, manufactures, gives, provides, lends, trades, mails, delivers, transfers, publishes, distributes, circulates, disseminates, presents, exhibits, advertises, offers, or agrees to offer through any means, including the Internet, any photograph, film, videotape, computer program or file, video game, or any other reproduction or reconstruction that depicts a child or incorporates the image of a child engaging in sexually explicit conduct; or

(2) Possesses or views through any means, including on the Internet, any photograph, film, videotape, computer program or file, computer-generated image, video game, or any other reproduction that depicts a child or incorporates the image of a child engaging in sexually explicit conduct.

A criminal defendant's intent or state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances of the crime. *Wright v. State*, 2022 Ark. 103, at 9, 644 S.W.3d 236, 241. Because intent cannot be proved by direct evidence, jurors can draw upon their common knowledge and experience to infer it from the circumstances. *Id.*, 644 S.W.3d at 241.

1. *Knowing possession of images*

a. Constructive possession

Lewis claims that the State never presented evidence proving that the LG phone and SD card found inside the phone, which were found in his residence when officers executed their search warrant, more likely belonged to him than the other occupants of the home.

It is not necessary for the State to prove that an accused physically held contraband, as possession can be proved by constructive possession, which is the control or right to control

4

the contraband. *Pokatilov v. State*, 2017 Ark. 264, at 3, 526 S.W.3d 849, 853. Constructive possession can be implied where the contraband is found in a place immediately and exclusively accessible to the defendant and subject to his control. *Id.*, 526 S.W.3d at 853. In cases involving joint occupancy of the premises where contraband is found, some additional factors must be present linking the accused to the contraband. *Id.* at 4, 526 S.W.3d at 854. Those factors include (1) that the accused exercised care, control, or management over the contraband; and (2) that the accused knew the matter possessed was contraband. *Id.*, 526 S.W.3d at 854. Control and knowledge can be inferred from the circumstances, such as the proximity of the contraband to the accused, the fact that it is in plain view, and the ownership of the property where it is found. *Id.*, 526 S.W.3d at 854.

Here, although no one was in Lewis's residence when the search warrant was executed there, Forga determined that there were other occupants of the residence. Battle was asked on direct examination if there was anything on the LG phone tying it to Lewis, and he responded that "[t]here was just, basically, text messages that were located on the phone. There was an e-mail address that was located on the phone. And, also, just normal pictures that you would see in the course of things just tying Mr. Lewis back to it."

Lewis faults Battle for not elaborating on the evidence tying Lewis to the LG phone and SD card. However, Lewis's challenge to Battle's credibility was a matter for the jury, not this court on appeal. *See Breeden*, 2013 Ark. 145, at 5, 427 S.W.3d at 8–9. Viewing the evidence in the light most favorable to the State, we hold that the emails, texts, and pictures linking Lewis to the LG phone were sufficient for the jury to conclude, without resorting to speculation or conjecture, that he constructively possessed both it and the SD card inside it.

5

b. Knowledge

Lewis further argues that in light of the immense amount of data on each device, the evidence did not support an inference that he had knowledge of the pornographic images they contained.

Here, Battle testified that he recovered more than 500 pornographic images, many of which were CGI, on Lewis's devices. Battle also testified that there were images located in a user-created folder labeled "DL8." He explained that "those are actually—were made by the user, DL8. There's nothing that's in the Android operating system manuals or anything that account for the folder name of DL8." Battle also found user-created internet searches leading to pornographic sites where some of the images had been found. Based on this testimony, we hold that this evidence is sufficient to demonstrate that Lewis had knowledge of the pornographic images found on his devices.

2. *Computer-generated images as depicting a "child"*

Lewis next argues that the individuals depicted in the CGI do not meet the legal definition of a "child" under Arkansas Code Annotated section 5-27-601(1) (Repl. 2013) and, therefore, the images do not fit within the statute under which he was convicted.

A person violates section 5-27-602(a)(2) if he or she "possesses through any means, including on the Internet, any photograph, film, videotape, computer program or file, computer-generated image, video game, or any other reproduction that depicts a child or incorporates the image of a child engaging in sexually explicit conduct." A "child" is defined as "[a] person under seventeen (17) years of age[.]" Ark. Code Ann. § 5-27-601(1). For purposes of the Arkansas Criminal Code, with exceptions inapplicable here, a "person" is "[a] natural person[.]" Ark. Code Ann. § 5-1-102(13)(A)(i) (Repl. 2013). Thus, although section 5-27-

6

602(a)(2) includes possession of CGI, the criminal act is limited to possession of images depicting or incorporating the image of a *child*—a natural person under seventeen years of age—engaging in sexually explicit conduct. Section 5-27-602(a)(2) necessarily excludes CGI that does not depict or incorporate the image of a child under the statutory definition.

Our reading of section 5-27-602(a)(2) is consistent with *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002). There, the Supreme Court declared unconstitutional as violative of the First Amendment section 2256(8)(B) of the Child Pornography Prevention Act of 1996 (CPPA), which prohibited "'any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture,' that 'is, *or appears to be*, of a minor engaging in sexually explicit conduct.'" *Free Speech Coalition*, 535 U.S. at 241 (quotations omitted) (emphasis added). The section captures a range of depictions, sometimes called "virtual child pornography," which include computer-generated images, as well as images produced by more traditional means. *Id.* at 241. The Supreme Court recognized that in *New York v. Ferber*, 458 U.S. 747 (1982), it had previously added child pornography as a category of speech outside the protection of the First Amendment because it is "intrinsically related" to the sexual abuse of children. *Id.* at 249. It held in *Free Speech Coalition*, however, that

> [i]n contrast to the speech in *Ferber*, speech that itself is the record of sexual abuse, the CPPA prohibits speech that records no crime and creates no victims by its production. Virtual child pornography is not "intrinsically related" to the sexual abuse of children, as were the materials in *Ferber*. While the Government asserts that the images can lead to actual instances of child abuse, the causal link is contingent and indirect.

*Id.* at 250 (citations omitted).

7

Here, Lewis contends that the State failed to present evidence that the CGI for which he was convicted contained matter depicting a *child* as defined by section 5-27-601(1).[1] We agree. The State presented no evidence that the images underlying counts 1, 15–16, and 23–30 depicted or incorporated the image of a *child*.

Regarding count 1, Battle testified that he categorized the image as a "[c]omparison" image, meaning that it was comparative to some other image on the drives that were collected and analyzed. In moving for a directed verdict on count 1, Lewis argued that "the image depicted is not a real person, much less a child. So the State has not proven beyond a reasonable doubt that that meets the definition in the statute." He continued that "[n]o reasonable juror could find that that's a child. If you look at the image, it[']s readily apparent that it's a cartoon; it's computer generated." Having reviewed the image in the record, we agree that it clearly contains an entirely computer-generated representation of a child. Thus, we hold that this evidence is not of sufficient force and character to compel a conclusion, without resorting to speculation or conjecture, that it depicts or incorporates the image of a child as defined by section 5-27-601(1). Accordingly, we must dismiss count 1 because it is not supported by substantial evidence.

Regarding count 15, Battle testified that he categorized that image as CGI based on clues in the background. On count 16, Battle categorized that image as CGI based on the actual

---

[1]In his sufficiency challenge on appeal, Lewis does not specify which computer-generated images that he claims fail to meet the legal definition of a child. However, in his as-applied challenge to the constitutionality of section 5-27-602(a)(2), he argues that the images underlying counts 1, 15–16, and 23–30 do not depict or incorporate the images of real children. Thus, we confine our analysis on appeal to those specific counts in which he argues that a review of the underlying images compels the conclusion that they were computer generated or animated and no real children were involved in their production.

face and background depicted. On count 23, Battle testified that he categorized the image as a comparison image, but that it appeared to be CGI. On counts 24–30, Battle testified that he categorized those images as CGI based on various visual cues. Lewis moved for a directed verdict on counts 15–16 and 23–30, arguing that the images underlying those counts did not contain a real person and, therefore, did not depict a child as defined under Arkansas law. We hold that the State failed to present evidence on each of these counts that the underlying images—which were identified as computer-generated images by the State's forensic expert—depicted or incorporated the image of a child. This constitutes a failure of proof sufficient to sustain Lewis's convictions. Thus, we reverse and dismiss on counts 15–16 and 23–30.[2]

---

[2]The dissent does not dispute that a conviction under section 5-27-602(a)(2) is limited to possession of images depicting or incorporating the image of an actual child engaging in sexually explicit conduct. The dissent asserts that once images are introduced at trial, "the decision whether each computer-generated image included a real child should be left in the hands of the jury." Under the dissent's view, that decision remained the jury's alone—insulated from appellate review—even though the State's expert was unable to say, when asked on cross-examination, whether a real person was used to produce the images that he identified as computer generated.

The dissent cites several federal cases for the proposition that the images themselves constituted sufficient proof for the trier of fact. But in those cases, the evidence either (1) was not confined to solely the images, or (2) included the appellate court's own review of, or inability to review, those images. *See, e.g.*, *United States v. Wilder*, 526 F.3d 1, 11 (1st Cir. 2008) (noting the medical expert's testimony that the anatomical detail in the images was medically consistent with the images being of real children); *United States v. Salcido*, 506 F.3d 729, 734 (9th Cir. 2007) ("[I]n this case, we need not decide whether the jury may determine the reality of persons depicted in images based solely on the images themselves. Here, the government presented additional evidence from which the jury could conclude that the images depicted actual children."); *United States v. Kimler*, 335 F.3d 1132, 1142 (10th Cir. 2003) ("The defects in Kimler's argument are further aggravated by his failure to designate the pertinent exhibits for us to review, his failure to cite any specific exhibit, and his failure to connect his argument to any specific exhibit."); *United States v. Deaton*, 328 F.3d 454, 455 (8th Cir. 2003) (per curiam) ("[h]aving viewed the [images], we find no plain error"). Here, because there was no evidence from which the jury, without resorting to surmise and conjecture, could have found Lewis's guilt on counts 1, 15–16, and 23–30, the circuit court should have granted a directed verdict on those counts. *See Winston*, 368 Ark. at 110, 243 S.W.3d at 308.

### 3. *Age of individuals in certain images*

Finally, Lewis argues that, with respect to counts 3–8, 11, 13, 17, and 22, no reasonable juror could have determined beyond a reasonable doubt that the individuals depicted in those images fell within the age parameters of section 5-27-601(1). He further argues that on four of those counts (counts 5, 13, 17, and 22), Battle testified that he could not determine that the person depicted in those images was below the age of majority.

Arkansas Code Annotated section 5-27-607(b) states that

[i]f it becomes necessary for a purpose of this subchapter to determine whether a person depicted engaging in sexually explicit conduct was under seventeen (17) years of age, the court or jury may make this determination by any of the following methods:

(1) Personal inspection of the person;

(2) Inspection of the photograph, film, videotape, computer program or file, video game, or any other reproduction or reconstruction picture that depicts the person engaging in the sexually explicit conduct;

(3) Expert medical testimony based on the appearance of the person engaged in the sexually explicit conduct; or

(4) Any other method authorized by law.

Pursuant to section 5-27-607(b), the age of the individuals in the images is a fact question for the jury. In making its determination, the jury heard expert testimony from Battle, who explained that he categorized the images underlying counts 3–4, 6–8, and 11 as "child abuse material." He elaborated that "child abuse material" means "any material that may be a child that's nude, that has their breasts exposed, their vagina exposed, whether they're just laying there or they're actual [sic] performing sexual intercourse or . . . sexually explicit conduct." Battle further testified that he categorized the images underlying counts 5, 13, 17, and 22 as "[a]ge [d]ifficult." He testified that "age difficult" is "basically, what it sounds like. Usually,

anybody that's over puberty—usually, about 14 to 17[.]" To the extent that Lewis is alleging inconsistencies in Battle's testimony, that was a matter for the jury to resolve. *See Hartley v. State*, 2022 Ark. 197, at 4, 654 S.W.3d 802, 805.

Additionally, the jurors reviewed the images and judged for themselves whether the images depicted a child within the age parameters of section 5-27-601(1). This was a fact question for the jury and, given the evidence before it, we cannot say that it was forced to resort to speculation or conjecture reaching its conclusions on the age of the individuals in the images at issue. Therefore, we hold that substantial evidence supports Lewis's convictions on counts 3– 8, 11, 13, 17, and 22, and we affirm his sufficiency-of-the-evidence challenges to them.

### B. Suppression

Next, Lewis argues that the circuit court's refusal to suppress physical evidence was clearly erroneous. He challenges (1) the warrantless seizure of SD cards that fell during his arrest; (2) the search pursuant to a warrant of those SD cards; (3) the search pursuant to a warrant of his home; and (4) the circuit court's refusal to suppress evidence that Lewis characterizes as fruit of the poisonous tree.

In reviewing the denial of a motion to suppress evidence, this court conducts a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court. *Dortch v. State*, 2018 Ark. 135, at 12, 544 S.W.3d 518, 525. A finding is clearly erroneous, even if there is evidence to support it, when the appellate court, after review of the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Id.*, 544 S.W.3d at 525. We defer to the superiority

of the circuit court to evaluate the credibility of witnesses who testify at a suppression hearing. *Id.*, 544 S.W.3d at 525–26.

1. *Seizure of SD cards*

Lewis first argues that the seizure of SD cards that fell to the porch from Lewis's person was illegal because Investigator Forga lacked probable cause for the seizure. The State responds that the seizure of the SD cards constituted a proper inventory search.

Under Arkansas Rule of Criminal Procedure 12.1,

> An officer who is making a lawful arrest may, without a search warrant, conduct a search of the person or property of the accused for the following purposes only:
>
> (a) to protect the officer, the accused, or others;
>
> (b) to prevent the escape of the accused;
>
> (c) to furnish appropriate custodial care if the accused is jailed; or
>
> (d) to obtain evidence of the commission of the offense for which the accused has been arrested or to seize contraband, the fruits of crime, or other things criminally possessed or used in conjunction with the offense.

Ark. R. Crim. P. 12.1. Additionally, we have recognized that inventory searches are an appropriate and necessary exception to the warrant requirement of the Fourth Amendment. *Thomas v. State*, 303 Ark. 210, 213–14, 795 S.W.2d 917, 918 (1990). The inventory is for the mutual protection of the detainee and the police. *Id.* at 214, 795 S.W.2d at 918.

In this instance, at the suppression hearing, Forga testified that as he was placing Lewis into custody, he saw that Lewis had a retractable cigarette-lighter holder with a lighter inside it. Forga was "absolutely" concerned that the lighter could be used as a weapon. Chief Johns removed the lighter, and three items hit the ground. They shined their flashlights toward the ground and saw three microSD cards, which they seized. Lewis's personal items, including the

SD cards, were put into evidence at the time of his arrest. Forga also maintained that he had seized items from Lewis's person as part of an inventory search pursuant to Lewis's arrest.

We agree that the SD cards were properly seized as an inventory search pursuant to Lewis's arrest. Investigator Forga explained that the seizure of the SD cards, along with the lighter, and lighter holder, were part of an inventory search. His credibility was a matter that we defer to the circuit court. *See Dortch*, 2018 Ark. 135, at 12, 544 S.W.3d at 525. Accordingly, we conclude that circuit court's refusal to suppress the seizure of the SD cards was not clearly erroneous.

2. *Search of SD cards*

Lewis next argues that the search of the SD cards should have been suppressed, despite the fact that investigators obtained a warrant before conducting the search, because the warrant was not supported by probable cause and because Forga included misleading information in the search-warrant application. The State responds that there was probable cause for the search warrant, that the affidavit supporting the warrant was not misleading, and that the officers relied on the warrant in good faith.

Our review of probable cause for the issuance of a warrant is confined to the information contained in the affidavit since that was the only information before the magistrate when he issued the warrant. *Johnson v. State*, 2015 Ark. 387, at 5, 472 S.W.3d 486, 489. An "application for a search warrant shall describe with particularity the persons or places to be searched and the persons or things to be seized, and shall be supported by one (1) or more affidavits . . . setting forth the facts and circumstances tending to show that such persons or things are in the places, or the things are in possession of the person, to be searched." Ark. R. Crim. P. 13.1(b). In determining the adequacy of the affidavit, the task of the issuing magistrate is to make a practical,

13

common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Johnson*, 2015 Ark. 387, at 4-5, 472 S.W.3d at 489. The duty of this court is to simply ensure that the magistrate had a substantial basis for concluding probable cause existed. *Id.* at 5, 472 S.W.3d at 489.

Here, in the affidavit supporting the application for a search warrant of the SD cards, Forga stated that Lewis's daughter had disclosed in an interview at the Arkansas Advocacy Center that Lewis engaged in deviant sex acts with her. Forga further stated that, during the interview, the decision was made to take Lewis into custody. While taking Lewis into custody, a search of his person was conducted, and the SD cards were discovered. They had been concealed inside a butane lighter container with a lighter on top. Forga noted that marijuana and a smoking pipe were also found on Lewis's person. Finally, Forga stated in the affidavit that an interview of Lewis was conducted at the sheriff's office the day after his arrest during which Lewis stated that the SD cards contained pornography.

Given the facts presented in the affidavit, including the abuse accusation by Lewis's daughter and his subsequent arrest, his concealment of the SD cards, and his acknowledgement that the SD cards contained pornography, it was reasonable to conclude that there was a fair probability that the pornography on the SD cards would include child pornography. Thus, we hold that probable cause existed for issuance of the search warrant, and the circuit court's denial of Lewis's motion to suppress the search of the SD cards was not clearly erroneous.

3. *Search of Lewis's home*

Lewis next argues that the search of his home was illegal because the search warrant for the home was not supported by probable cause. According to Lewis, the mere fact that the SD

14

cards contained suspected child pornography did not automatically establish that he would have additional evidence in his home.

Here, after searching the SD cards, Investigator Forga obtained a separate search warrant for Lewis's residence. Forga stated in his affidavit that while executing the search warrant of the SD cards, it was determined that they contained in excess of one hundred CGI photos and videos depicting deviate sexual activity involving prepubescent children. Forga asserted his belief that the residence contained evidence either related to, or used to generate, the images and videos recovered on the SD cards.

Considering both the affidavit and Forga's suppression-hearing testimony, the evidence supported a finding of reasonable cause to believe that evidence related to, or used to generate, the images and videos discovered on the SD cards would be found in Lewis's residence. We cannot say that the circuit court's denial of Lewis's motion to suppress the search of his residence was clearly erroneous, and we affirm on this point.

### 4. *Digital evidence as fruit of an illegal interview*

In his last suppression argument, Lewis contends that the digital evidence recovered from the SD cards should have been suppressed because Forga used information gathered during his later-suppressed interview of Lewis to obtain the search warrants pursuant to which that evidence was recovered. Lewis acknowledges that his argument is contrary to *United States v. Patane*, 542 U.S. 630 (2004), and that this court expressly adopted the *Patane* holding in *Lewis v. State*, 2017 Ark. 211, at 11, 521 S.W.3d 466, 475. He nonetheless claims that *Lewis* was wrongly decided and should be overruled. We decline to overrule our settled law, and we affirm on this point.

C. Admission of Rape-Allegation Testimony

Lewis next argues that the circuit court abused its discretion by allowing testimony about an allegation that he had previously raped his five-year-old daughter. He argues that there was no permissible basis for its admission under Arkansas Rule of Evidence 404(b) and that it should have been excluded under Rule 403 because its immense prejudicial effect outweighed any slight probative value. The State responds that the evidence was highly probative of Lewis's knowledge of and intent to possess child pornography and, alternatively, any evidentiary error was harmless.

Circuit courts have broad discretion in deciding evidentiary issues, and we will not reverse a circuit court's ruling on the admission of evidence absent an abuse of discretion. *Collins v. State*, 2019 Ark. 110, at 5, 571 S.W.3d 469, 472. Abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Id.*, 571 S.W.3d at 472. Furthermore, we will not reverse unless the appellant demonstrates that he was prejudiced by the evidentiary ruling. *Id.*, 571 S.W.3d at 472.

Arkansas Rule of Evidence 404(b) provides that

[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Ark. R. Evid. 404(b). Evidence admitted under Rule 404(b) must be independently relevant to a material issue in the case. *Cook v. State*, 345 Ark. 264, 270, 45 S.W.3d 820, 824 (2001). Evidence is independently relevant if it has a tendency to make the existence of any fact that is

of consequence to the determination of the action more or less probable than it would be without the evidence. *Fowlkes v. State*, 2020 Ark. 56, at 4, 592 S.W.3d 702, 705.

The following facts are relevant to our analysis. Only one witness at trial expressly testified about the alleged rape. When Investigator Cleek was asked what first caused her to come into contact with Lewis, she testified that she "was investigating a rape allegation made by [Lewis's] five-year-old daughter." Although Investigator Forga did not specifically mention the alleged rape, he alluded to it when he testified that he came into contact with Lewis when he "was contacted by fellow law enforcement that Jeremey Lewis needed to be taken into custody due to another case involving a child." The prosecutor also referenced the rape allegation in closing argument.

In our relevancy analysis, we turn to the State's assertion that the rape allegation is relevant to prove Lewis's knowledge, intent, and lack of mistake in possessing the images for which he was convicted. Lewis maintained at trial that he did not knowingly possess the images for which he was charged with possessing. Although the rape of a child and possession of child pornography are not the same crime, this court has recognized that "the degree of similarity between the circumstances of prior crimes and the present crime required for admission of evidence under Rule 404(b) is a determination that affords considerable leeway to the trial judge, and may vary with the purpose for which the evidence is admitted." *Fowlkes*, 2020 Ark. 56, at 5, 592 S.W.3d at 705 (quoting *Sasser v. State*, 321 Ark. 438, 447, 902 S.W.2d 773, 778 (1995)). Given the circuit court's considerable leeway, we cannot dispute the independent relevance of the rape allegation in proving Lewis's knowledge and lack of mistake on the possession-of-child-pornography charges.

Lewis also argues that even if the evidence was relevant, it was so prejudicial that the circuit court abused its discretion when it refused to exclude it under Arkansas Rule of Evidence 403. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Ark. R. Evid. 403.

Here, assuming that the danger of unfair prejudice outweighed the probative value of the rape allegation, we conclude that the harmless-error doctrine applies. When a circuit court errs in admitting evidence, this court may declare an evidentiary error harmless if the evidence of guilt is overwhelming and the error is slight. *Collins*, 2019 Ark. 110, at 7, 571 S.W.3d at 472. In this case, the State presented overwhelming evidence of Lewis's guilt in possessing the images. The jurors heard expert testimony on each image from Special Agent Battle, and they viewed the images to determine which ones they believed fit within the parameters of section 5-27-602(a)(2). Some of those images were recovered from SD cards that fell from Lewis's person during his arrest. Others were collected from an LG cell phone that also contained text messages and an email account associated with Lewis.

The error was slight for several additional reasons. First, Cleek was the only witness that specifically mentioned a rape investigation, and she clarified on cross-examination that to her knowledge, Lewis had not been charged or convicted of a crime relating to the rape allegation. Second, although the State commented on the allegations in closing arguments, the jury was instructed that closing arguments are not evidence. Third, the jury was also instructed not to take evidence of other crimes, acts, or wrongs into consideration as evidence of Lewis's bad character. This court presumes that jurors follow the circuit court's instructions. *See Hampton v.*

*State*, 2014 Ark. 303, at 7, 437 S.W.3d 689, 693. Fourth, the jury did not give him maximum sentences on any of the crimes for which he was convicted. *See Kelley v. State*, 2009 Ark. 389, at 20–21, 327 S.W.3d 373, 384 (holding that evidentiary error was slight where appellant did not receive the maximum sentence for his crime). Instead, the jury acquitted Lewis of five counts, gave him the minimum available sentence of three years on nineteen counts, and recommended that those sentences run concurrently to Lewis's seven-year sentences on the remaining six counts. For these reasons, we hold that any evidentiary error was harmless.

D. Admission of Evidence of Uncharged Child Pornography

Lewis next argues that the circuit court abused its discretion in admitting State's exhibits 31–42—additional pornographic images for which he was not charged—over his objection. Lewis again argues that the State failed to specify a permissible purpose for introducing the uncharged images under Rule 404 and that their prejudicial effect far outweighed their probative value under Rule 403.

With regard to the admissibility of photographs, this court has stated:

> The mere fact that a photograph is inflammatory or is cumulative is not, standing alone, sufficient reason to exclude it. Even the most gruesome photographs may be admissible if they assist the trier of fact in any of the following ways: by shedding light on some issue, by proving a necessary element of the case, by enabling a witness to testify more effectively, by corroborating testimony, or by enabling jurors to better understand the testimony. Of course, if a photograph serves no valid purpose and could be used only to inflame the jurors' passions, it should be excluded.

*Williams v. State*, 374 Ark. 282, 290, 287 S.W.3d 559, 565 (2008) (quoting *Weger v. State,* 315 Ark. 555, 560, 869 S.W.2d 688, 691 (1994)).

Lewis consistently argued below that the State failed to prove that he violated section 5-27-602(a)(2) because it did not demonstrate that he *knowingly* possessed the images. Given Lewis's defense that he lacked knowledge, the admission of the additional images was relevant

to show knowledge, intent, and absence of mistake or accident. *See, e.g., Steele v. State*, 2014 Ark. App. 257, at 10, 434 S.W.3d 424, 430 (holding that evidence of computer images of child pornography, for which Steele was not charged with possessing, was relevant to show knowledge, intent, and absence of mistake and was thus properly admitted in prosecution for distributing, possessing, or viewing child pornography, where Steele denied knowledge of child pornography on his computer). Additionally, although Battle testified that he recovered more than five hundred pornographic images involving children, many of which were computer-generated images, from Lewis's devices, the State only sought to admit eleven uncharged images at trial. In light of this evidence, we conclude that the prejudicial effect of these additional images did not far outweigh their probative value. Thus, we hold that the circuit court did not abuse its discretion in admitting the additional images, and we affirm its ruling.

E. Facial Constitutionality of Arkansas Code Annotated Section 5-27-602

Lewis makes a facial challenge to the constitutionality of section 5-27-602. Relying on *Free Speech Coalition*, 535 U.S. 234, he argues that section 5-27-602(a) is unconstitutionally overbroad because it infringes on state and federal constitutional guarantees of free speech. He claims that its provisions suffer from the same defects as the CPPA provisions that the Supreme Court struck down in *Free Speech Coalition*.

We have stated that statutes are presumed to be constitutional, and this court resolves all doubts in favor of constitutionality. *Talbert v. State*, 367 Ark. 262, 269, 239 S.W.3d 504, 511 (2006). The party challenging a statute's constitutionality has the burden of proving that it is unconstitutional. *Id.*, 239 S.W.3d at 511. There are two primary ways to challenge the constitutionality of a statute: (1) an as-applied challenge, in which the court assesses the merits of the challenge by considering the facts of the particular case in front of the court, not

hypothetical facts in other situations; and (2) a facial challenge, which seeks to invalidate the statute. *Ward v. Hutchinson*, 2018 Ark. 313, at 10, 558 S.W.3d 856, 862. With regard to facial challenges in general, this court has said facial invalidation of a statute is appropriate if it can be shown that under *no* circumstances can the statute be constitutionally applied. *Jegley v. Picado*, 349 Ark. 600, 623, 80 S.W.3d 332, 344 (2002).

In *Free Speech Coalition*, 535 U.S. 234, the Supreme Court held that some of the language of the CPPA, which extended the federal prohibition against child pornography to sexually explicit images that appear to depict minors but are produced without using real children, unconstitutionally infringed upon the free speech guarantee in the First Amendment. Our review of section 5-27-602(a) compels the conclusion that its scope is limited to images depicting or incorporating the images of actual children engaged in sexually explicit conduct. We hold that section 5-27-602(a) does not suffer from the defects found in the CPPA in *Free Speech Coalition*. Accordingly, we affirm the circuit court's rejection of Lewis's facial challenge to section 5-27-602.

F. As-applied Constitutional Challenge to Section 5-27-602

In his as-applied challenge, Lewis asserts that the application of section 5-27-602(a) to counts 1, 15–16, and 23–30 directly violates *Free Speech Coalition* because no real children were involved in the production of those images. He asks this court to reverse and dismiss his convictions on those counts.

Generally, an issue or case becomes moot when any judgment rendered would have no practical legal effect upon a then-existing legal controversy. *Siegel v. State*, 2021 Ark. 228, at 8, 635 S.W.3d 313, 318. As a general rule, the appellate courts of this state will not review issues

that are moot. *Id.*, 635 S.W.3d at 318. To do so would be to render advisory opinions, which we will not do. *Id.*, 635 S.W.3d at 318.

We reverse and dismiss counts 1, 15–16, and 23–30 for a failure of proof that the images underlying those counts contained matter depicting or incorporating the image of a child as defined by section 5-27-601(1). Because we reverse and dismiss those counts, any judgment rendered on this point would have no practical effect. Accordingly, we conclude Lewis's challenge to counts 1, 15–16, and 23–30 is moot.

G. Affirmative-Defense Jury Instruction

Last, Lewis argues that the circuit court abused its discretion in denying his request for an affirmative-defense jury instruction based on section 5-27-602(c), which states that "[i]t is an affirmative defense to a prosecution under this section that the defendant in good faith reasonably believed that the person depicted in the matter was seventeen (17) years of age or older."

A party is entitled to a jury instruction when it is a correct statement of the law and when there is some basis in the evidence to support giving the instruction. *Caple v. State*, 2020 Ark. 340, at 9, 609 S.W.3d 630, 635. The circuit court's decision to give or reject an instruction will not be reversed unless the court abused its discretion. *Id.*, 609 S.W.3d at 635–36.

Lewis claims that he was entitled to the instruction because a "layperson's view of many images would have compelled the conclusion that it was reasonable to believe the person depicted in the images was older than 17 [years old]." But Lewis did not present evidence at trial of his beliefs when viewing the images. Instead, he asserted that he did not knowingly possess the images. We agree with the circuit court that there was no basis in the evidence to

support giving the instruction. We therefore hold that the circuit court did not abuse its discretion by refusing to give an affirmative-defense instruction, and we affirm its ruling.

Affirmed in part; reversed and dismissed in part.

BAKER, HUDSON, WOOD, WYNNE, and WOMACK, JJ., concur in part and dissent in part.

**COURTNEY RAE HUDSON, Justice, concurring in part and dissenting in part.** I agree with the majority opinion that counts 1, 15–16, and 23–30 must be dismissed due to insufficient evidence that the images depicted a "child" as defined by Arkansas Code Annotated section 5-27-601(1). The only evidence presented by the State in support of these charges, other than the images themselves, was the testimony of Arkansas State Police Special Agent Corwin Battle, who, based on his training, characterized all but one of these images as computer generated or animated. The exception was the image in count 1, which Battle categorized as a "comparison" image because it was a duplicate of another image discovered on the devices. As the majority holds, count 1 quite obviously depicts cartoon or animated figures. With regard to counts 15–16 and 23–30, Battle testified that he characterized them as computer generated not only based on the background objects but also the faces and/or the bodies in most of these images. While Battle indicated that computer-generated images can be rendered from an actual photograph, when he was asked whether he could definitively state that the virtual images in this case were produced using a real person, Battle responded, "No. I can't say either way if they're a real person or they're not."

We will affirm a verdict only if it is supported by substantial evidence, which is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *McCray v. State*, 2020 Ark.

23

172, 598 S.W.3d 509. Based on the evidence presented, the jury was clearly forced to speculate as to whether the images in these counts depicted an actual child, and the circuit court failed to perform its gatekeeper role by not dismissing these charges at the conclusion of the prosecution's case. I therefore concur with the dismissal of counts 1, 15–16, and 23–30. I also agree that the circuit court did not err by denying Jeremey Lewis's motion to suppress the physical evidence.

However, I disagree with the majority's conclusion that admission of evidence of the rape allegation by Lewis's daughter was harmless error. Under Arkansas Rule of Evidence 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." "Thus, evidence admitted under Rule 404(b) must be independently relevant to a material issue in the case." *Johnston v. State*, 2014 Ark. 110, at 5, 431 S.W.3d 895, 898. For evidence to be independently relevant, it must have a tendency to make the existence of any fact of consequence to the determination of the action more or less probable than it would be without the evidence. Ark. R. Evid. 401. Nevertheless, even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Ark. R. Evid. 403.

The State argued that testimony regarding the rape allegation was relevant to show Lewis's knowledge, intent, or lack of mistake in possessing the charged images in this case. Assuming, *arguendo*, that the State is correct, the minimal probative value of this evidence was clearly outweighed by its immense prejudicial effect. In *Akins v. State*, 330 Ark. 228, 955 S.W.2d 483 (1997), we held that testimony about a prior rape was not properly admitted at a rape trial pursuant to Rule 404(b) where the two crimes were not sufficiently similar. In

24

addition, we held that "whatever probative value" the prior rape had "was substantially outweighed by the danger of prejudice." *Id*. at 236, 955 S.W.2d at 487. As Lewis asserts, not only did the uncharged allegation that he had raped his daughter have little, if any, probative value in his trial for the separate crime of possession of child pornography, it is also hard to conceive of an allegation more prejudicial than this. Thus, the circuit court abused its discretion by not excluding this evidence.

Furthermore, I simply cannot agree that the error in admitting this extremely prejudicial testimony was harmless. We may declare an evidentiary error harmless only if the evidence of guilt is overwhelming and the error is slight. *Collins v. State*, 2019 Ark. 110, 571 S.W.3d 469; *Johnston v. State*, 2014 Ark. 110, 431 S.W.3d 895. Given the difficulties expressed by the State's own witness in determining the age of the children depicted in the charged images, as well as the jury's acquittal on five of the "age-difficult" images, the evidence supporting Lewis's guilt was far from overwhelming. Nor was the error slight in this case. The prosecution referenced the rape allegation in its opening statement, in its case-in-chief, and again in its closing arguments. In his rebuttal closing argument, the prosecutor stated, "But, I mean, this conduct could not go unchecked. Jeremey Lewis—we didn't just stumble upon him. He was being investigated for the rape of his 5-year-old daughter. And, guess what, he's got images of children being raped. Every one of these images is not just child pornography, it depicts a crime. A crime being committed against a child. Rape in Arkansas is a Class Y felony. You're going to see image after image." As Lewis argues, judging from these comments, the State clearly hoped to prove that he is a bad person who deserves to be punished, which is exactly the type of evidence that Rule 404(b) is designed to exclude. Indeed, despite the majority's conclusion to the contrary, it is difficult to imagine an error any *more* harmful than the introduction of the

allegation that a father had raped his young daughter. Accordingly, I would reverse and remand for a new trial based on the erroneous admission of this evidence, and I respectfully dissent from the majority's decision to affirm on this point.

BAKER and WYNNE, JJ., join.

RHONDA K. WOOD, Justice, concurring in part and dissenting in part. The majority reverses and dismisses eleven counts of possessing or viewing matter depicting sexually explicit conduct involving a child based on insufficient evidence that the images depicted real children. Because I believe a jury, not this court, should decide whether the images depicted real children, I dissent.

As explained by the majority, on a sufficiency-of-the-evidence challenge, "we view the evidence in the light most favorable to the State and consider *only the evidence* that supports the conviction." *McClendon v. State*, 2019 Ark. 88, at 3, 570 S.W.3d 450, 452 (emphasis added). It is for the jury, not this court, to weigh evidence. *Reynolds v. State*, 2016 Ark. 214, at 3, 492 S.W.3d 491, 494. This court reverses only if the evidence was not substantial, and the jury would have to resort to speculation to reach a decision. *See id.*

The majority recites our standard of review but proceeds in a different direction. In reversing the eleven counts, the majority considers only the portions of Agent Battle's testimony favorable to the defense, a 180-degree turn from "only considering the evidence that supports the conviction." And it makes no attempt to view the evidence in the light most favorable to the State. Most alarming is the majority's conclusion that there was a "failure of proof" that the images depicted or incorporated a real child because the State's expert identified "the image" as a computer-generated one. This shift seemingly implies that labeling an image as computer generated means it cannot depict or incorporate an actual child. Identifying how an image or

photograph was created does not preclude it from depicting an actual child. Likewise, computer-generated backgrounds do not necessarily mean the person in the photo is not real.

Once the images were introduced and admitted at trial, it became a question for the trier of fact whether the image depicted a real child. While this court may look at the images and reach a decision that is different from the jury's, that is not our role. The decision whether each computer-generated image included a real child should be left in the hands of the jury.

And what evidence the jury did have was enough to convict. The images alone constituted sufficient proof for the trier of fact. The federal circuits have held that the images themselves, without any further testimony, are sufficient evidence for the jury to determine whether the image contains a real child rather than a computer-generated one. *See United States v. Kimler*, 335 F.3d 1132, 1142 (10th Cir. 2003); *United States v. Deaton*, 328 F.3d 454, 455 (8th Cir. 2003) (per curiam) (holding a jury can determine when a real child is depicted even when the images were the only evidence). And the First Circuit, after relying on precedent to hold that the question whether an image depicts a virtual child or a real child is an issue for the trier of fact, mentioned that all federal circuits had reached the same result. *United States v. Wilder*, 526 F.3d 1, 11 n.7 (1st Cir. 2008) (citing *United States v. Salcido*, 506 F.3d 729, 733–34 (9th Cir. 2007) for its collection of cases). If the jury can review photos to determine whether an individual is a minor, a jury can also determine whether the individual is real.

For these reasons, I dissent from the majority's decision to reverse and dismiss these eleven counts; I concur with the remainder of the opinion.

WOMACK, J., joins.

*Tinsley & Youngdahl, PLLC*, by: *Jordan B. Tinsley*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen.; and *Walker K. Hawkins*, Ass't Att'y Gen., for appellee.