Cite as 2026 Ark. App. 155

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CR-25-250

| | |
|---|---|
| ALBERTO DOMINGUEZ<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered March 4, 2026<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTH DIVISION<br>[NO. 60CR-23-4612]<br><br>HONORABLE MELANIE MARTIN, JUDGE<br><br>AFFIRMED; REMANDED TO CORRECT THE SENTENCING ORDER |

**WENDY SCHOLTENS WOOD, Judge**

Alberto Luis Dominguez appeals the Pulaski County Circuit Court sentencing order convicting him of thirty counts of possession of matter depicting sexually explicit conduct involving a child and sentencing him to an aggregate of twenty-four years' imprisonment. In addition to challenging the sufficiency of the evidence to support the convictions, Dominguez challenges the denial of two motions to suppress—the motion to suppress records obtained by the Attorney General's Office pursuant to a records subpoena and the motion to suppress evidence obtained from the execution of the search warrant for electronic devices. We affirm.

## I. *Facts*

On November 27, 2023, Dominguez was charged with thirty counts of possession of matter depicting sexually explicit conduct involving a child pursuant to Arkansas Code Annotated section 5-27-602 (Supp. 2025). The evidence introduced at trial established that Special Agent Amber Kalmer, who worked as an investigator for the Internet Crimes Against Children and Human Trafficking Divisions of the Attorney General's Office, received two cyber tips from the National Center for Missing and Exploited Children (NCMEC) that child sexual-abuse material (CSAM) had been uploaded or shared from a specific IP address in Arkansas. The Attorney General's Office subpoenaed the internet provider of the IP address to provide the account information, which identified Dominguez as the account holder with a service address of 1700 W. Dixon Road in Little Rock. Surveillance determined that Dominguez still resided at the address.

Special Agent Kalmer obtained a search warrant, which was executed on August 10, 2023, by special agents of the Attorney General's Office and investigators with the Pulaski County Sheriff's Office. Dominguez, three other adults, and two children were at the house. After the house had been cleared and the search had begun, some residents were questioned by the officers outside the home. Dominguez, after being Mirandized, stated in a recorded interview that his phone, which he had owned for a year, was in a black and orange case and was located in the kitchen. He provided his password to law enforcement and stated that he did not share his electronics. Dominguez also said that he had searched for and viewed adult pornography but had not viewed pornography of "girls" of questionable age.

During the search, officers found four cell phones, multiple laptops, and a camera. Officers ran forensic searches of the devices to preview them to determine which ones to seize and examine further. The preview of Dominguez's cell phone revealed thirty images and videos containing CSAM. They were sorted and saved in various folders that Dominguez created and named within his phone's photo-gallery application. Included among the folders containing CSAM were selfies of Dominguez. The State introduced a screenshot of his photo gallery with the various folders and one image from each folder. A folder titled "Beatrix" showed a prepubescent girl pulling her underwear to the side while spreading her legs. No CSAM was found on the other devices.

Dominguez was arrested and placed in the patrol car. When Dominguez's mother and sister spoke to him from outside the patrol car, an investigator overheard Dominguez tell his mother and sister that he kept the photos to himself and that he did not share them with anyone else. Dominguez also kept repeating "I fu**** up" and that he "should have never done that."

At the close of the State's case, Dominguez moved for directed verdict on all counts. He conceded that the images and videos contained CSAM but argued that the State failed to establish that he had "knowledge" of the images and videos, asserting that his vague statements that he "fu**** up" were insufficient to show that he knowingly possessed CSAM. The circuit court denied the motion, and the defense rested without putting on any evidence. Dominguez renewed his motion for directed verdict, which the circuit court denied. The

jury found him guilty and sentenced him to eight years' imprisonment on each count. Dominguez filed this appeal.

## II. *Sufficiency of the Evidence*

We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Odom v. State*, 2025 Ark. App. 148, at 2. When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Id.* We will affirm a judgment of conviction if substantial evidence exists to support it. *Id.* Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.* Jurors do not and need not view each fact in isolation; rather, they may consider the evidence as a whole. *Id.* The jury is entitled to draw any reasonable inference from circumstantial evidence to the same extent that it can be from direct evidence. *Id.* The jury may resolve questions of conflicting testimony and inconsistent evidence and may choose to believe the State's account of the facts rather than the defendant's. *Id.* at 2–3.

"A person commits [the crime of] distributing, possessing, or viewing of matter depicting sexually explicit conduct involving a child if the person knowingly . . . [p]ossesses or views through any means, including on the internet, any photograph, film, videotape, computer program or file, computer generated image, video game, or any other reproduction that depicts a child or incorporates the image of a child engaging in sexually explicit conduct[.]" Ark. Code Ann. § 5-27-602(a)(2) (Supp. 2025). Dominguez concedes that the

4

images at issue depict sexually explicit conduct involving a child and that he possessed those images. However, he challenges the intent element, arguing that the State failed to present sufficient evidence that he did so "knowingly" as required by the statute.

Dominguez argues that although there was evidence that the images were on his cell phone, there was no evidence that he put them there, noting he denied that he searched for or viewed the images. He recognizes that he made "vague statements" to police that he "fu**** up" but asserts that it would be entirely speculative to know what he was referring to without more. He argues that although the IP address was registered to him, it does not show who was using the internet to view or upload child pornography, noting that multiple people lived in the home, and anyone with the internet password could have used his IP address. Dominguez also argues that there was no evidence that he used FreeChat, which was the platform used to upload the images. Essentially, he argues there was no evidence of how or when the images were downloaded to the phone, which he had only owned for a year, and no evidence of the phone's age or prior owner.

Dominguez further asserts that there is no evidence of where the images were located on his phone other than on "internal storage" and no evidence that the images were viewed on the phone. He states that if law enforcement had actually investigated when the images were downloaded by using forensic tools, the question of sufficiency may be different. Dominguez argues that mere possession does not amount to knowing possession and that the presence of child pornography on a device is not conclusive evidence of knowing possession.

We are not persuaded by these arguments. The following evidence supports the jury's findings that Dominguez knowingly possessed matter depicting sexually explicit conduct involving a child. The cyber tips revealed that the CSAM was uploaded using Dominguez's IP address. His cell phone, which was password protected, was the only device in which officers found the CSAM. When he was interviewed during the execution of the search warrant, he described his phone to officers and told them where it was located. Dominguez's phone was found charging in that location. He also told officers that he did not share his electronic devices. The CSAM was saved into different folders that Domiguez had created and named within the photo-gallery application. Along with the images containing CSAM found in the folders were selfies of Dominguez. One specific image of a prepubescent girl pulling aside her underwear while spreading her legs would have been visible when he opened his photo gallery. Shortly after his arrest, he admitted to his family that he kept the images to himself, did not share them, and that he "fu**** up."

In *Odom*, Odom argued there was no proof he knowingly possessed the phone or the laptop containing child-pornography images because there was no proof that he downloaded the images or that they were not downloaded by a third party. 2025 Ark. App. 148, at 4. Although the phone and the laptop were found in Odom's car in which he was the only occupant, there was also evidence—like the case at bar—that there was an image of Odom on the phone and on the laptop. We affirmed Odom's convictions. *Id.* In *Taliaferro v. State*, we explained that we look to see if there was any ownership, dominion, or control over the material itself or dominion over the premises in which the material was found. 2020 Ark.

App. 68, at 12, 597 S.W.3d 58, 63–64. "A jury need not lay aside its common sense in evaluating the ordinary affairs of life, and it may infer a defendant's guilt from improbable explanations of incriminating conduct." *Steele v. State*, 2014 Ark. App. 257, at 6, 434 S.W.3d 424, 428 (quoting *Walley v. State*, 353 Ark. 586, 594, 112 S.W.3d 349, 353 (2003)). Because a criminal defendant's intent can seldom be proved by direct evidence, it must usually be inferred from the circumstances surrounding the crime. *Id.* at 6, 434 S.W.3d at 429.

Viewing the evidence in the light most favorable to the verdict, we hold there is sufficient evidence to establish that Dominguez knowingly possessed the images depicting sexually explicit conduct involving a child.

### III. *Motions to Suppress*

In reviewing the denial of a motion to suppress evidence, this court conducts a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court. *Lewis v. State*, 2023 Ark. 12, at 11. A finding is clearly erroneous, even if there is evidence to support it, when the appellate court, after a review of the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Id.* We defer to the superiority of the circuit court to evaluate the credibility of witnesses who testify at a suppression hearing. *Id.* at 11– 12. We review issues involving statutory interpretation de novo. *State v. Bailey*, 2024 Ark. 87, at 4, 687 S.W.3d 819, 822.

A. Denial of Motion to Suppress of Records Obtained by the
Attorney General's Subpoenas

Dominguez contends that the circuit court erred in not suppressing the records obtained by subpoenas issued by the Attorney General's Office in violation of the court order requirement of the Stored Communications Act (SCA) pursuant to 18 U.S.C. § 2703(a), (d). He contends that the records connecting him to the IP address of the house were obtained by subpoena—rather than a court order that requires a showing of probable cause—and served as the basis for the search warrants.

Although 18 U.S.C. § 2703(a), (d) may require a warrant or court order in some cases, Dominguez's argument fails to address 18 U.S.C § 2703(c), which provides:

> **(c) Records concerning electronic communication service or remote computing service.**–(1) A governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity—

> . . . .

> (E) seeks information under paragraph (2).

> (2) A provider of electronic communication service or remote computing service shall disclose to a governmental entity the–

> (A) name;

> (B) address;

> (C) local and long distance telephone connection records, or records of session times and durations;

> (D) length of service (including start date) and types of service utilized;

(E) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and

(F) means and source of payment for such service (including any credit card or bank account number), of a subscriber to or customer of such service when the governmental entity uses an administrative subpoena authorized by a Federal or State statute or a Federal or State grand jury or trial subpoena or any means available under paragraph (1).

18 U.S.C. § 2703(c)(1)(E) & (c)(2).

The SCA permits subpoenas issued in accordance with a state statute. *See* 18 U.S.C. § 2703(c)(2) (stating that a provider shall disclose to a governmental entity certain information pursuant to, among other things, "an administrative subpoena authorized by a Federal or State statute"); *see also United States v. Orisakwe*, 624 F. App'x 149, 154 (5th Cir. 2015); *United States v. Taylor*, 54 F.4th 795, 804 (4th Cir. 2022) ("[G]overnmental entities may use an administrative subpoena to obtain basic subscriber information, including a subscriber's name, address, telephone number or other subscriber number or identity, a subscriber's length of service and the types of services the subscriber or customer utilized. 18 U.S.C. §§ 2703(c)(2)(A)–(F) . . . . To procure other information pertaining to a subscriber or customer without consent, the government must secure either a probable cause warrant or a court order. 18 U.S.C. § 2703(c)(1).").

Arkansas Code Annotated section 25-16-705 (Repl. 2024) provides the Attorney General with subpoena power:

(a) In all litigation, including criminal matters, in which the interests of the State of Arkansas are involved or may become involved before any tribunal, board, or commission, the Attorney General shall have the right to subpoena any person or the books, records, or other documents being held by any person. He or she shall have

the authority to administer oaths for the purpose of taking testimony of witnesses subpoenaed before him or her, which he or she may deem necessary to adequately present the state's case.

One of the subpoenas in this case sought the following from Cobridge Communications:

> To include all names, addresses, (including address of internet service if different from billing address), telephone numbers, date account created, account status, email address, alternate email address, registration from IP, date IP registered, login IP addresses associated with session times and dates, detailed billing logs, and method of payment.
>
> IP: 24.35.132.106 on 02-13-2023 at 00:32:11 UTC to 00:38:23 UTC[.]

The other subpoena requested the same information for "IP: 24.35.132.106 on 05-04-2023 at 00:08:29 UTC." Both subpoenas state that they were issued pursuant to Arkansas Code Annotated section 25-16-705; were issued by Assistant/Deputy Attorney General Ryan Cooper; and ordered that the records be provided to Special Agent Kalmer. The information sought falls under the type of information that may be requested by an administrative subpoena pursuant to 18 U.S.C. § 2703(c)(2).

Contrary to Dominguez's assertion, the SCA does not require a search warrant or court order to obtain the information sought by the subpoenas in this case. Therefore, we affirm the denial of the motion to suppress records.

 B. Motion to Suppress Evidence Obtained from Electronics Search Warrant

Our review of probable cause for the issuance of a warrant is confined to the information contained in the affidavit since that was the only information before the magistrate when he or she issued the warrant. *Johnson v. State*, 2015 Ark. 387, at 5, 472 S.W.3d 486, 489. An "application for a search warrant shall describe with particularity the

10

persons or places to be searched and the persons or things to be seized, and shall be supported by one (1) or more affidavits . . . setting forth the facts and circumstances tending to show that such persons or things are in the places, or the things are in possession of the person, to be searched." Ark. R. Crim. P. 13.1(b). In determining the adequacy of the affidavit, the task of the issuing magistrate is to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him or her, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Johnson*, 2015 Ark. 387, at 4–5, 472 S.W.3d at 489. The duty of the appellate court is to simply ensure that the magistrate had a substantial basis for concluding probable cause existed. *Id.* at 5, 472 S.W.3d at 489.

Dominguez concedes that there was probable cause to search the residence but disputes the probable cause to search his cell phone. Dominguez argues that the search warrant lacked particularity required because it sought to "seize and search all electronics." He contends that the affiant was aware that three individuals lived in the home, but the warrant authorized the search of any electronic device regardless of who owned, used, or controlled them.[1] Dominguez contends that the affidavit fails because it did not "allege any reason to believe [he] owned a cell phone let alone used it in [the commission of] the crime," citing *United State v. Griffith*, 867 F.3d 1265, 1279–80 (D.C. Cir. 2017).

---

[1]Dominguez asserts that the warrant should have only authorized the seizure of each device, and then the officers should have sought a warrant to search each device.

The affidavit in this case was prepared by Special Agent Kalmer, who testified at the suppression hearing. Her affidavit provided that she received two cyber tips from the NCMEC reporting that nine images containing CSAM were uploaded from a local IP address. Special Agent Kalmer reviewed the images, which showed nude or partially nude prepubescent females exposing their vaginas, and believed they met the statutory definition of child pornography. She then subpoenaed[2] the internet provider to disclose subscriber-information records associated with the IP address that was used to upload images of child pornography. The records obtained revealed that the account was registered to Dominguez. Surveillance of the home and a records check of the address showed that Dominguez and two other individuals lived in the home.

Special Agent Kalmer stated in the affidavit that, on the basis of her training and experience, persons involved with CSAM generally store the images on computers, removable storage devices, or other hardware or medium that can store visual depictions in digital form and, further, that these persons often store the CSAM on cell phones and portable storage media where it can be readily available for their use and arousal. She then sought a search warrant seeking the following:

> 23. *Nature of examination.* Based on the foregoing, and consistent with Arkansas Rule of Criminal Procedure 13, the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire

---

[2]The affidavit for search warrant incorrectly stated that she obtained the subscriber information by court order.

medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

24. Therefore, I respectfully request this Court to issue a warrant to search the residential dwelling, vehicles, trailers, and any computer and computer media, including cellular telephones and external storage devices described in Attachment A, to seize the evidence, fruits, and instrumentalities described in Attachment B, which individually or collectively constitute violation(s) of Arkansas Criminal Code 5-27-602 Distributing, possessing, or viewing matter depicting sexually explicit conduct involving a child.

The information provided in this affidavit was sufficient for the issuing magistrate to conclude that evidence of possession of CSAM would be found on an electronic device in Dominguez's house. Thus, the search of Dominguez's cell phone is supported by probable cause.

To the extent that Dominguz asserts that the warrant lacked particularity, we disagree. The Supreme Court, in *Groh v. Ramirez*, 540 U.S. 551, 559–60 (2004), explained the Constitution's particularity requirement for search warrants:

"The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional. That rule is in keeping with the well-established principle that 'except in certain carefully defined classes of cases, a search of private property without proper consent is "unreasonable" unless it has been authorized by a valid search warrant.'"

(Citations omitted.) Rule 13.2(b)(iv) of the Arkansas Rules of Criminal Procedure provides, in part: "The warrant shall state, or describe with particularity . . . the persons or things constituting the object of the search and authorized to be seized[.]" Although the U.S. Constitution and Rule 13.2(b)(iv) require that a warrant describe objects with particularity, "[h]ighly technical attacks on search warrants are not favored lest police officers are

13

discouraged from obtaining them." *Watson v. State*, 291 Ark. 358, 367, 724 S.W.2d 478, 483 (1987). "The tension therefore lies between the constitutional requirement for particularity and the judicial recognition that reviewing courts should not be hypertechnical in assessing the validity of a search warrant." *Jemison v. State*, 2019 Ark. App. 475, at 3, 588 S.W.3d 359, 363.

Contrary to Dominguez's assertion that the warrant authorized a general search or "rummaging," it authorized a search for CSAM on any electronic devices that could be used to store digital images. It is not the same as a search of a person's cell-phone contents in a search incident to arrest. *See Riley v. California*, 573 U.S. 373 (2014). And these facts are not akin to the facts in *Griffith*, 867 F.3d 1265, where the D.C. Circuit Court held that a warrant for all cell phones and computers in relation to a year-old homicide investigation failed on the Fourth Amendment particularity requirement. Dominguez's reliance on these cases is misplaced.

This was not a case where officers were given free rein to look for anything within a phone that may be evidence of a crime. The warrant was issued because the affidavit stated that CSAM had been uploaded or shared by an unknown user from the IP address registered to Dominguez. The warrant authorized officers to search for evidence of a specific crime— possession of matter depicting sexually explicit conduct involving a child. Considering the facts of this case, this was sufficiently particular.

Last, Domingez argues that the Arkansas Constitution offers greater protection of individual privacy than the Fourth Amendment, citing the concurring opinion of Justice

Hannah in *Griffin v. State*, 347 Ark. 788, 804, 67 S.W.3d 582, 593 (2002). The majority in *Griffin*, which was a warrantless-search case, recognized that the courts "have the authority to impose greater restrictions on police activities in our state based upon our own state law than those the Supreme Court holds to be necessary based upon federal constitutional standards." *Id.* at 792, 67 S.W.3d at 584. Dominguez also cites a variety of other Arkansas cases that he contends expand privacy rights beyond what the Fourth Amendment requires and grant more due-process and confrontation rights. None of the cases cited, however, holds that the warrant requirement of article 2, section 15 of the Arkansas Constitution affords more protection than the Fourth Amendment.

In conclusion, we affirm the denial of the motion to suppress evidence obtained from the electronics search warrant.

IV. *Sentencing Order*

The sentencing order, as the State notes, is incomplete. Many of the fields are blank, such as how the sentences will be served, whether Dominguez was found guilty at a jury trial, and the total time to be served. The record indicates that Dominguez was sentenced to eight years' imprisonment for each count with counts one through three to run consecutively and the remaining counts to run concurrently with each other and with counts one through three.  Therefore, we remand for correction of the sentencing order. *See, e.g., Hill v. State*, 2026 Ark. App. 71, at 4.

Affirmed; remanded to correct the sentencing order.

GLADWIN and MURPHY, JJ., agree.

15

*John Wesley Hall* and *Samantha J. Carpenter*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.